PEOPLE v VAN AUKER

Docket No. 44917. Submitted June 2, 1981, at Lansing.—Decided
     November 30, 1981. Leave to appeal denied, 413 Mich 879.

     David R. Van Auker was convicted by a jury in Ingham Circuit
     Court of assault with intent to do great bodily harm less than
     murder. Three days later, a second jury convicted Van Auker
     of being a fourth-time habitual offender. Defendant was sen-
     tenced on the two convictions to a single flat term of 10 years
     in prison with credit for time already served, Jack W. Warren,
     J. Defendant appeals. *Held:*

     1. The police officers who arrested defendant made a forcible,
     warrantless entry into the apartment where defendant was
     staying in order to arrest him. The warrantless entry violated
     the Fourth Amendment, and the trial court erred in admitting
     evidence obtained as a result of the arrest. However, although
     the admission into evidence of bloodstained money and testi-
     mony that defendant was found hiding in the attic of the
     apartment building was error, the error was harmless in light
     of the overwhelming evidence of defendant's guilt.

     2. Defendant's claim that due diligence to locate the victim of
     the alleged assault was not shown and that the victim's prelim-
     inary examination testimony should not have been read to the
     jury is not supported by the record. The trial court did not
     clearly abuse its discretion in excusing the prosecutor's failure
     to produce the alleged victim at trial and in ruling that the
     alleged victim's preliminary examination testimony was admis-
     sible.

     3. Defendant's claim that the prosecutor committed error
     requiring reversal by eliciting testimony regarding defendant's
     refusal to give a tape-recorded statement and that such action

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Search and Seizure §§ 35, 44, 56.
[2] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 18.
     47 Am Jur 2d, Jury § 237.
     Validity and construction of statute or court rule prescribing num-
          ber of peremptory challenges in criminal case according to nature
          of offense or extent of punishment. 8 ALR4th 149.

constituted an impermissible comment on his exercise of his right to remain silent is without merit.

4. Defendant's claim that the prosecutor deprived him of a fair trial by asking questions which insinuated that defendant had stolen a friend's car and by making a comment during closing arguments which insinuated that defense counsel was in league with defendant in trying to "run a con" on the jury concerns matters not objected to at trial which, had they been objected to, could have been cured by cautionary instructions.

5. The trial court erred by denying defendant's request for 20 peremptory challenges at his habitual offender trial. Defendant's habitual offender conviction is vacated and the case remanded for retrial on the habitual offender charge or, in the alternative, resentencing on the underlying assault conviction without enhancement.

6. Defendant was not improperly sentenced to concurrent sentences on his assault and habitual offender convictions. The trial court correctly imposed only one sentence.

7. Defendant was improperly sentenced to a flat 10-year prison term. Upon resentencing, defendant is entitled to an indeterminate sentence.

8. Defendant is not entitled to credit for time served on an allegedly void sentence imposed in 1975 on a larceny conviction.

Affirmed in part, reversed in part and remanded.

1. SEARCHES AND SEIZURES — WARRANTLESS SEARCH — EXIGENT CIR-
CUMSTANCES.

A search and seizure made without a warrant may be reasonable where exigent circumstances exist; exigent circumstances are present where immediate action is necessary to: (1) protect police officers or other persons, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of the accused.

2. CRIMINAL LAW — HABITUAL OFFENDERS — JURY — PEREMPTORY
CHALLENGES — COURT RULES.

It was error for a trial court to deny a defendant's request for 20 peremptory challenges at an habitual offender trial where defendant was subject to a potential sentence of life imprisonment (GCR 1963, 511.5).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,*

Prosecuting Attorney, and *Janis L. Blough,* Chief Appellate Attorney, for the people.

*James Krogsrud,* Assistant State Appellate Defender, and *John Nussbaumer,* Research Attorney, for defendant on appeal.

Before: BEASLEY, P.J., and M. J. KELLY and N. A. BAGULEY,* JJ.

BEASLEY, P.J. Defendant, David Reeves Van Auker, was found guilty by a jury of assault with intent to do great bodily harm less than murder, in violation of MCL 750.84; MSA 28.279. Shortly thereafter, defendant was convicted by a second jury as an habitual (fourth felony) offender, in violation of MCL 769.12; MSA 28.1084. Defendant was sentenced to a flat term of 10 years in prison, with credit for time already served. He now appeals as of right.

Defendant's first claim is that the police officers' forcible, warrantless entry into the apartment where he was staying in order to arrest him violated the Fourth Amendment[1] and that the trial court erred in admitting evidence obtained as a result of the arrest. We agree.

Defendant was arrested after the police made a forced, warrantless entry into an apartment rented by his girlfriend's cousin. Defendant and his girlfriend both testified that they had been staying at this apartment for a couple of days prior to defendant's arrest.

After the police searched the apartment for defendant without success, they searched the attic section of the multi-unit dwelling house in which

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] US Const, Am IV; Const 1963, art 1, § 11.

the apartment was located. Defendant was found hiding behind a chimney in a second attic.

The arresting officer reached defendant's hiding place by crawling through a two-by-three-foot access hole he found in a closet in defendant's girlfriend's cousin's apartment. This access hole opened into a crawl space that extended the full length of the dwelling house. The officer then went through a second two-by-three-foot access hole which led from the crawl space up into the second attic where defendant was found.

In *Payton v New York*,[2] the United States Supreme Court held that a warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest was unconstitutional. The court stated:

"[A]ny differences in the intrusiveness of entries to search and entries to arrest are merely ones of degree rather than kind. The two intrusions share this fundamental characteristic: the breach of the entrance to an individual's home. The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their * * * houses * * * shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' *Silverman v United States,* 365 US 505, 511 [5 L Ed 2d 734; 81 S Ct 679; 97 ALR2d 1277 (1961)]. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."

[2] 445 US 573, 589-590; 100 S Ct 1371; 63 L Ed 2d 639 (1980).

Although it might be argued that defendant did not have a "legitimate expectation of privacy" in the second attic of the dwelling house which would give him standing to challenge the admission of evidence under the rule stated in *Rakas v Illinois*,[3] he did have a legitimate expectation of privacy in the apartment where he had been staying. It was only through forcible, warrantless entry and search of the apartment that the police were able to find and gain access to defendant's hiding place.

We reject the people's contention that *Payton, supra,* made a drastic change in the law and should not be applied retroactively to the warrantless entry in the present case, which occurred prior to the decision in *Payton*.[4]

We also reject the people's contention that there were exigent circumstances that would permit the warrantless, nonconsensual entry into the apartment. Exigent circumstances are present where immediate action is necessary to (1) protect the police officers or other persons, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of the accused.[5] The people contend that the warrantless entry was necessary to prevent defendant's escape and to prevent destruction of evidence.

There was testimony that at least five police officers were present at the time of defendant's arrest and that there was only one entrance to the apartment in which he was hiding. Under these circumstances, we believe that the officers could have kept watch over the building and prevented any attempted escape while waiting for an arrest warrant to be issued.

---

[3] 439 US 128; 99 S Ct 421; 58 L Ed 2d 387 (1978).

[4] See, *People v Beachman,* 98 Mich App 544; 296 NW2d 305 (1980).

[5] *People v Dugan,* 102 Mich App 497; 302 NW2d 209 (1980).

The people also contend that immediate entry was necessary to prevent the destruction of the bloodstained money which was later admitted as evidence at trial. However, unlike *People v Hopko,*[6] where the police knew that there were marijuana plants that defendant could destroy if they did not act immediately, the police here did not know that defendant had the bloodstained money in his possession until after they had arrested him.

To reach a finding of exigent circumstances in such a situation would allow police officers to make warrantless entries to effect arrests whenever they suspected that a suspect *might* have evidence in his possession which *might* be destroyed. We decline to do so.

We note that a search warrant had been sought prior to the officers' entry of the apartment in the present case. A warrant was issued about one hour after defendant's arrest.

Although the trial court erred in admitting into evidence the bloodstained money and testimony that defendant was found hiding in the attic, we find that this error was harmless, in light of the overwhelming evidence of defendant's guilt.[7]

Defendant's second claim is that due diligence to locate the victim of the alleged assault, James White, was not shown and that his preliminary examination testimony should not have been read to the jury. This claim is not supported by the record.

Prior to his disappearance, James White had appeared regularly at trial proceedings. The prose-

---

[6] 79 Mich App 611; 262 NW2d 877 (1977).

[7] *People v Robinson,* 386 Mich 551; 194 NW2d 709 (1972). See also *People v Wagner,* 104 Mich App 169; 304 NW2d 517 (1981), and *People v Lovett,* 85 Mich App 534; 272 NW2d 126 (1978).

cutor had no indication that he would not appear for trial other than letters written by defendant in which he claimed White had told him that he would not appear. Soon after White's absence became known to the prosecutor, the investigating officer in the case began efforts to find him. He and other officers searched for White locally and he made numerous telephone calls to White's brother in Detroit and sisters in Alabama. After one of White's sisters informed the officer that she had received a card from her brother from Atlanta, the officer also sent a LEIN message there where a check was made of local jails. Finally, he took a trip to Alabama and Georgia to personally check files and interview White's sisters and parents.

A review of the record indicates that the prosecution used due diligence in attempting to locate White and that the defense had extensively cross-examined him at the preliminary examination. Under these circumstances, we find that the trial court did not clearly abuse its discretion in excusing White's production at trial and in ruling that his preliminary examination testimony was admissible.[8]

Defendant's third claim is that the prosecutor committed reversible error by eliciting testimony regarding defendant's refusal to give a tape-recorded statement. He contends that this was an impermissible comment on his exercise of his right to remain silent under the rule in *People v Bobo*.[9] The complained-of testimony, which was not objected to at trial, reads as follows:

"*Q. [Prosecutor]:* Did there come a time, Officer Cook,

[8] *People v Castaneda,* 81 Mich App 453; 265 NW2d 367 (1978).
[9] 390 Mich 355; 212 NW2d 190 (1973).

when you asked Mr. Van Auker if he would like to give a taped statement?

"*A. [Officer Cook]:* Yes, sir.

"*Q.* What did he indicate to you?

"*A.* No, sir, at that time he did not wish to give a taped statement.

"*Q.* Did that terminate the interview at that time?

"*A.* Yes, sir."

Defense counsel's cross-examination of this witness began with the following exchange:

"*Q. [defense counsel]:* Officer, actually, he indicated to you he didn't wish to give a taped statement until he talked to his lawyer, isn't that correct?

"*A.* That's correct."

Defendant did make a statement to the police and only refused to give a taped statement. A similar situation was addressed by this Court in *People v Collier.*[10] There, it was claimed that the prosecutor's comment during his opening statement that a witness would testify that defendant said he would not sign a statement he made unless he first consulted with an attorney and the witness's subsequent testimony to that effect were impermissible comments on defendant's right to remain silent under the rule in *Bobo, supra.* This Court found *Bobo* inapplicable, as silence was not involved. We find the same reasoning to be applicable in the present case and conclude that this issue is without merit.

Defendant's fourth claim is that the prosecutor deprived him of a fair trial by asking questions which insinuated that defendant had stolen a friend's car and by making a comment during closing arguments which insinuated that defense

---

[10] 105 Mich App 46; 306 NW2d 387 (1981).

counsel was in league with defendant in trying to "run a con" on the jury.

No objections were raised at trial. Had defense counsel objected, the trial judge could have limited the prosecutor's questions and closing argument. Moreover, the, prosecutor's questions and argument, when read in context, were such that any prejudicial effect could have been cured by cautionary instructions.[11]

Defendant next claims that the trial judge committed reversible error at defendant's habitual offender trial by giving him only five peremptory challenges. This question was previously addressed by this Court in *People v Ross*[12] as follows:

"The defendant asserts that a person charged as a fourth offender may receive a life sentence and, therefore, GCR 1963, 511.5 is applicable. Also, defendant maintains that GCR 1963, 511.5 conflicts with MCL 769.12; MSA 28.1084, and where a court rule and statute conflict, the court rule controls. The prosecution asserts that the statute and court rule are not inconsistent, because the habitual offenders act does not create a substantive crime.

* * *

"GCR 1963, 511.5 specifically refers to criminal cases where the *offense* is punishable by life imprisonment. Since the habitual offender act does not create an offense, the statute and the court rule are not inconsistent." (Emphasis in original.)

Subsequent to the decision in *People v Ross, supra,* however, the Supreme Court reached the opposite conclusion in *People v Helzer,*[13] a case involving the sexual delinquency provision of the

---

[11] *People v Rojem,* 99 Mich App 452; 297 NW2d 698 (1980).

[12] 84 Mich App 218, 222; 269 NW2d 532 (1978).

[13] 404 Mich 410; 273 NW2d 44 (1978).

gross indecency statute.[14] The sexual delinquency provision, like the habitual offender provisions, provides for alternate sentencing. The fact that the sexual delinquency charge did not constitute a separate offense was not dispositive. Rather, the crucial consideration of the Court in determining that the defendant was entitled to 20, rather that 5, peremptory challenges was the potential life sentence under the sexual delinquency charge.

Based on the Supreme Court's decision in *People v Helzer, supra,* we find that it was error to deny defendant's request for 20 peremptory challenges at his habitual offender trial. Defendant's habitual offender conviction is vacated and this case remanded for retrial on the habitual offender charge or, in the alternative, resentencing on the underlying assault conviction without enhancement.

Defendant's final three issues relate to his sentence. First, he contends that he was improperly sentenced to concurrent sentences on his assault and habitual offender convictions. His claim is based on records of the Department of Corrections. We disagree.

Defendant concedes that the judgment of sentence entered by the trial court correctly imposes only one sentence. The Department of Corrections is not a party to this case and, consequently, any error in their records cannot be raised in the context of this appeal.

Defendant next alleges that he was improperly sentenced to a flat 10-year term. We agree.[15] Upon resentencing, defendant is entitled to an indeterminate sentence.

Finally, defendant claims that he is entitled to credit for time served on an allegedly void sen-

---

[14] MCL 750.338; MSA 28.570.

[15] *People v Langham,* 101 Mich App 391; 300 NW2d 572 (1980).

tence imposed in 1975 on a larceny conviction. Defendant did not appeal the 1975 sentence. Instead, he has waited until he appealed an unrelated conviction and sentence to raise the issue. Defendant's failure to raise this issue at the time of his 1975 conviction and sentence precludes him from collaterally raising it now.

This case is remanded for proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.