PEOPLE v OSWALD (AFTER REMAND)

Docket Nos. 116519, 120912. Submitted December 20, 1990, at Lansing. Decided March 18, 1991, at 9:20 A.M. Leave to appeal sought.

Robert L. Oswald was convicted of two counts of malicious destruction of property over $100, one count of extortion, and one count of possession of a firearm during the commission of a felony following trial in the Berrien Circuit Court, and was sentenced as an habitual offender, fourth offense. The Court of Appeals, in an unpublished opinion per curiam decided March 31, 1988 (Docket Nos. 85570, 92507), reversed and remanded for a new trial. After four jury trials on remand, Gordon W. Britten, J., the defendant was again convicted of all charges and sentenced as a fourth-felony habitual offender to prison terms of forty to sixty years for the extortion conviction, two years for the felony-firearm conviction, and ten to fifteen years for each of the convictions of malicious destruction of property. The defendant filed two appeals, which were consolidated.

The Court of Appeals held:

1. The trial court did not err in admitting the arresting officer's testimony on retrial concerning items seized in an inventory search of the defendant's automobile at the time of arrest. Although evidence of these items was ordered suppressed in the prior appeal on the basis that the search was illegal, the officer's testimony on retrial was based on his observation of these items, a source wholly independent of, and therefore untainted by, the illegal search.

2. The trial court did not err in admitting evidence of a writing tablet discovered in the defendant's automobile and turned over to the police by his former spouse after she retrieved the automobile from police impoundment. The protection against unreasonable search and seizure is not violated where a private individual, acting with no knowledge on the

REFERENCES

Am Jur 2d, Jury § 244.

Validity and construction of statute or court rule prescribing number of peremptory challenges in criminal cases according to nature of offense or extent of punishment. 8 ALR4th 149.

part of the police, seizes evidence and voluntarily gives it to the police.

3. The trial court did not err in refusing to suppress evidence of a .44 caliber revolver seized in a search of the defendant's stepmother's home. Although this weapon was beyond the scope of the search warrant, it was found in plain view, and the police had a reasonable basis for connecting the weapon to the defendant's alleged offenses.

4. The trial court did not abuse its discretion by admitting evidence of a .22 caliber semiautomatic pistol. Contrary to the defendant's claim, there was evidence linking this weapon to the defendant and to the offenses, and its admission was not unfairly prejudicial to the defendant.

5. There was clear and convincing evidence of an independent basis in support of a witness' in-court identification of the defendant as the purchaser of both pistols.

6. The trial court did not abuse its discretion in denying the defendant's request to call the prosecutor at his original trial as a witness on retrial. The defendant's allegations of prosecutorial misconduct pertained to the original trial only and were irrelevant to the trials at issue in this appeal.

7. The trial court did not err in limiting the defendant to five peremptory challenges during jury selection at the habitual-offender trial which followed his extortion conviction. MCL 769.12; MSA 28.1084, which makes conviction as a fourth-felony offender punishable by imprisonment for life or a lesser term of years and provides for five peremptory challenges by a defendant charged with being a fourth-felony offender, is not affected by MCR 6.102(B), which at the time of the defendant's trial provided for twenty peremptory challenges by a defendant charged with an offense punishable by life imprisonment. The habitual-offender statute does not create a substantive offense which is separate from and independent of the principal charge. Rather, the statute provides for a sentence-enhancement procedure for purposes of deterrence and punishment.

8. The trial court did not have the benefit of the decision in *People v Milbourn*, 435 Mich 630 (1990), when it imposed the forty- to sixty-year sentence for the defendant's conviction of extortion as a fourth-felony habitual offender, requiring vacation of the sentence and remand for resentencing in accordance with *Milbourn.*

9. Because the defendant's claim of ineffective assistance of counsel is not apparent from the record and because he failed to move for a new trial or an evidentiary hearing, he waived

appellate review of the claim of ineffective assistance of counsel.

Affirmed, but remanded for resentencing.

CRIMINAL LAW — HABITUAL OFFENDERS — JURY — PEREMPTORY CHALLENGES.

A defendant charged as a fourth-felony habitual offender, thereby being subject to a potential sentence of life imprisonment, is limited by statute to five peremptory challenges of potential jurors; no conflict exists between the habitual-offender statute and the court rule which provides for a greater number of peremptory challenges by a defendant charged with an offense punishable by life imprisonment, because the statute merely provides a sentence-enhancement procedure for purposes of deterrence and punishment, not a substantive offense separate from and independent of the principal charge (MCL 769.13; MSA 28.1085; MCR 6.102[B], now MCR 6.412[E][1]).

*Frank J. Kelley*, Attorney General, *Gay Secor Hardy*, Solicitor General, *John L. Livesay*, Prosecuting Attorney, and *J. Ronald Kaplansky*, Assistant Attorney General, for the people.

State Appellate Defender (by *Gail Rodwan*), and Robert L. Oswald, in propria persona, for the defendant on appeal.

### AFTER REMAND

Before: SULLIVAN, P.J., and DOCTOROFF and MURPHY, JJ.

MURPHY, J. Defendant was originally convicted and sentenced as a fourth-felony habitual offender, MCL 769.12; MSA 28.1084, on two counts of malicious destruction of property over $100, MCL 750.377a; MSA 28.609(1), one count of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and one count of extortion, MCL 750.213; MSA 28.410. This Court reversed defendant's convictions and remanded for a new trial in an unpublished opinion per curiam

decided March 31, 1988 (Docket Nos. 85570 and 92507). On remand, after four jury trials, defendant was again convicted of all charges. In Docket No. 116519, the trial court sentenced defendant as a fourth-felony habitual offender to forty to sixty years in prison for extortion. Later, defendant was sentenced as a fourth-felony habitual offender to concurrent ten- to fifteen-year prison terms for malicious destruction of property and to a consecutive two-year term for felony-firearm in Docket No. 120912. Defendant appeals as of right from his convictions in both cases, which are consolidated before this Court. We affirm defendant's convictions, but remand for resentencing.

Defendant's convictions were the ultimate result of a dispute between defendant and the members of the Preston family, who operated a dairy farm and had purchased defendant's adjacent forty-acre farm at a foreclosure auction in May 1982. Apparently, this sale was never completed because the bank was unable to provide the Prestons with clear title to the farm. About this time, defendant began asserting that he still owned the farm and insisted that the Prestons seek his permission to harvest the crops they had planted on the land. In spring of 1983, the bank again offered to sell the farm and the Prestons purchased it at that time. They had no further dealings with the defendant.

At approximately 4:00 A.M. on July 8, 1984, Glenn Preston went out to the barn to milk the cows and discovered that two hundred gallons of milk from the previous evening had been drained from the storage tank. The telephone lines to the barn, his house, and his father's house had been cut. The vehicles at both houses had flat tires. When the police came, it was discovered that there were holes in the engine blocks of a tractor and a

self-propelled haybine. Three other tractors were also damaged.

Two days later, Glenn Preston received a telephone call and identified defendant as the caller. The caller said:

> My client informs me that you had some trouble on your farm. Would you like to borrow, one, two, three, four, or five tractors? This is costing my client five thousand dollars which you will pay.
>
> My client informs me he told you not to trespass on your farm. You should have done as he said. He wants a written apology mailed to his farm within two weeks, or one or three homes will burn. My client does his work at night which means there will be loss of life.

Preston called the police, who came back to the farm and reinspected the damaged farm equipment. They found .22 caliber shell casings on the floor of the building where the machinery was stored. Bullet fragments were also recovered from the haybine and a tractor.

The Westland, Michigan, home of defendant's stepmother, Emma Harris, was searched for a .22 caliber firearm pursuant to a warrant. A .22 caliber semiautomatic pistol and a .44 caliber revolver were found between the mattress and box spring of the bed used by defendant's children when they visited. Both weapons were seized. A gun dealer in Ohio identified defendant as the man who had purchased both weapons in June 1984, using an Ohio driver's license bearing the name Bob Harris. At defendant's trials, experts testified that the .22 caliber cartridges and metal fragments found on the Prestons' floor were fired from the .22 caliber weapon seized during the search. Moreover, they also testified that a circular fragment recovered

from the haybine was fired from the seized .44 caliber revolver.

At 10:00 P.M. on August 24, 1984, patrol officers stopped defendant's vehicle after hearing a police radio broadcast concerning the outstanding felony warrants and a description of his automobile. Defendant was arrested and his car was searched. The arresting officer found and seized three used .44 Magnum shell casings and a knife. He also observed two checkbooks, one in defendant's own name and one bearing the name of Bob Harris, and an Ohio driver's license bearing defendant's picture and the name Bob Harris, but left these items in the car.

When defendant later asked his former wife, Sandra Oswald, to retrieve his car, which the police had impounded, she found a writing tablet among the items she removed from the car for storage. She later turned this tablet over to the police after she read the writing on it and recognized defendant's printing. Defendant's fingerprints were found on the tablet, and an expert identified the writing as defendant's, although heavily disguised. The words written on the tablet closely paralleled the telephone call described by Glenn Preston.

I

Defendant raises several evidentiary issues which merit only brief discussion.

First, we find no error in either trial resulting from the admission of the arresting officer's testimony concerning items he observed during an inventory search of defendant's vehicle at the time of his arrest. In defendant's first appeal, this Court ordered these items suppressed on retrial because a search of defendant's automobile, which occurred

five days after his arrest, was illegal because of a defective warrant. However, the arresting officer's testimony on retrial was based on his observation of this evidence, a source wholly independent of, and therefore untainted by, the illegal search. *People v Kroll,* 179 Mich App 423, 428-429; 446 NW2d 317 (1989); *People v Harajli,* 148 Mich App 189; 384 NW2d 126 (1986).

Second, defendant's claim that, at his extortion trial, the trial court should have also suppressed evidence of the writing tablet bearing defendant's printing is also without merit. Defendant's former wife discovered the writing tablet after she retrieved his automobile from the police impoundment at defendant's request and was removing his property from it for storage. She voluntarily turned the tablet over to the police. The protection against unreasonable search and seizure is not violated when a private individual, acting with no knowledge on the part of the police, seizes evidence and voluntarily gives it to the police. *People v DeLeon,* 103 Mich App 225, 228; 303 NW2d 447 (1981); *People v Langley,* 63 Mich App 339, 344; 234 NW2d 513 (1975).

Third, we conclude that the trial court did not err in refusing to suppress the .44 caliber revolver seized during the search of the Harris home. Although this weapon was outside the scope of the search warrant, it was inadvertently discovered along with the .22 caliber weapon which was described in the warrant as a result of the shell casings found near the damaged machinery at the Prestons' farm. The officer in charge of the case was aware from the beginning of the investigation that some other, larger weapon might also be involved. The officer stated that he seized the .44 caliber revolver, rather than a .44 semiautomatic rifle also found at the Harris home, because a

semiautomatic weapon would have discarded shell casings when fired and no .44 caliber casings were found near the damaged machinery. We conclude that the .44 caliber revolver was found in plain view and the officer had a reasonable basis for connecting it to the crime he was investigating and seizing it. *People v Secrest,* 413 Mich 521, 525-529; 321 NW2d 368 (1982). Moreover, because the evidence against defendant in both trials was overwhelming, suppression of this evidence was not likely to have resulted in defendant's acquittal. Therefore, even if the admission of this weapon was error, it was harmless error. *People v Robinson,* 386 Mich 551, 563; 194 NW2d 709 (1972).

Fourth, there is no merit to defendant's claim that the trial court abused its discretion by admitting the .22 caliber semiautomatic pistol into evidence. Defendant contends that this weapon had no probative value because there was no evidence linking it to the charges of malicious destruction of property. Contrary to defendant's claim, there was a great deal of evidence linking this weapon to defendant and to the crimes. Probative evidence of guilt is always prejudicial from a defendant's point of view. The relevant question is whether the evidence was unfairly prejudicial. *People v Bunting,* 145 Mich App 210, 213; 377 NW2d 307 (1985). In this case, it was not.

Fifth, we find that there was clear and convincing evidence that the witness who made an in-court identification of defendant as the man who purchased both weapons had a sufficient independent basis for the identification to warrant admission of this testimony. *People v Laidlaw,* 169 Mich App 84, 92-93; 425 NW2d 738 (1988).

Sixth, defendant has failed to establish that the trial court abused its discretion by denying his request to call the prosecutor from his original

trial as a witness on retrial. Defendant's allegations of prosecutorial misconduct pertained only to the original trial and were irrelevant to the trials at issue in this appeal.

## II

Defendant also contends that the trial court erred when it allowed him only five peremptory challenges during jury selection at the habitual-offender trial which followed his extortion conviction. According to defendant, because the habitual-offender charge exposed him to a possible life sentence, he was entitled to twenty peremptory challenges pursuant to MCL 768.13; MSA 28.1036 and MCR 6.102(B), now MCR 6.412(E). We disagree.

MCL 769.12; MSA 28.1084 provides that a person convicted as a fourth-felony offender may be sentenced to life in prison or a lesser term of years. MCR 6.102(B), the court rule in effect at the time of defendant's trial, provided:

> If the offense charged is punishable by life imprisonment, the defendant is entitled to 20 peremptory challenges and the prosecutor, 15; for other offenses, each party is entitled to 5 peremptory challenges.[1]

See also MCL 768.13; MSA 28.1036. However, MCL 769.13; MSA 28.1085, which sets forth the procedure for habitual-offender prosecutions, provides that the defendant is entitled to only five peremptory challenges. In procedural matters such as

---

[1] The present court rule, MCR 6.412(E)(1), provides in part:

Each defendant is entitled to 5 peremptory challenges unless an offense charged is punishable by life imprisonment, in which case a defendant being tried alone is entitled to 12 peremptory challenges . . . .

this, court rules ordinarily supersede conflicting statutory provisions. MCR 1.104, 6.001(E). However, we find no conflict between the court rule and MCL 769.13; MSA 28.1085, and hold that a defendant charged as a fourth-felony habitual offender is entitled only to the five peremptory challenges provided by statute.

·We note that a conflict has developed among the panels of this Court that have considered this issue. In *People v Ross,* 84 Mich App 218, 222; 269 NW2d 532 (1978), the panel held that the defendant was only entitled to five peremptory challenges at his habitual-offender trial when the underlying offense did not expose him to life imprisonment, reasoning:

> In *People v Shotwell,* 352 Mich 42, 46; 88 NW2d 313 (1958), cert den 356 US 976; 78 S Ct 1141; 2 L Ed 2d 1149 (1958), the Court stated as follows:
>
> "Despite that case, [*People v Brown,* 253 Mich 537; 235 NW 245; 82 ALR 341 (1931)] however, we further note that substantive crimes are created and defined in our penal code whereas the statutory provisions for second and subsequent offenders are found in our code of criminal procedure. This is some indication, we think, that the legislature did not intend to make a separate substantive crime out of being a habitual criminal but rather, for deterrent purposes, intended to augment the punishment for second or subsequent felonies."
>
> See also, *People v Ungurean,* 51 Mich App 262, 265; 214 NW2d 873 (1974).
>
> GCR 1963, 511.5 specifically refers to criminal cases where the *offense* is punishable by life imprisonment. Since the habitual offender act does not create an offense, the statute and the court rule are not inconsistent. [Emphasis in original.]

However, in *People v Van Auker,* 111 Mich App 478; 314 NW2d 657 (1981), rev'd on other grounds

419 Mich 918 (1984), another panel of this Court held that a defendant is entitled to twenty peremptory challenges at a fourth-felony habitual-offender trial. The panel based its holding on *People v Helzer,* 404 Mich 410; 273 NW2d 44 (1978), a case involving the sexual delinquency provision of the gross indecency statute, MCL 750.338; MSA 28.570:

> The sexual delinquency provision, like the habitual offender provisions, provides for alternate sentencing. The fact that the sexual delinquency charge did not constitute a separate offense was not dispositive. Rather, the crucial consideration of the Court in determining that the defendant was entitled to 20, rather that [sic] 5, peremptory challenges was the potential life sentence under the sexual delinquency charge. [*Van Auker, supra,* 487.]

See also *People v Roupe,* 150 Mich App 469, 475; 389 NW2d 449 (1986).

However, we find that *Helzer* is distinguishable from the present case. In fact, in *Helzer,* the Supreme Court itself was careful to distinguish between a prosecution pursuant to the sexual delinquency provision and an habitual-offender proceeding. *Id.,* 416-417, 425. Sexual delinquency is an alternate sentencing provision under which a defendant is prosecuted in order to determine whether special circumstances surrounding the principal charge warrant an alternate sentence. *Id.,* 418, n 11. Proof of the sexual delinquency charge may involve more than the simple ministerial considerations of proving prior convictions. Although prior convictions may form the basis for a guilty verdict, sexual delinquency is not explicitly dependent upon any prior conviction except the principal charge. The only limitation is that

the jury must weigh the acts specified in MCL 750.10a; MSA 28.200(1) as constituting sexual delinquency. *Id.*

By contrast, the purpose of an habitual-offender proceeding is to punish the defendant for his prior offenses by enhancing the sentence on the principal charge. The offense is totally defined and limited by the existence of prior convictions. *Id.*

Thus, we conclude that this Court's opinion in *Ross* is the correct result. The habitual-offender statute does not create a substantive offense that is separate from and independent of the principal charge. Rather, it is a sentence-enhancement procedure with a deterrent and punitive purpose. *Ross, supra,* 222. MCR 6.102(B) and the current court rule, MCR 6.412(E)(1), expressly base the number of peremptory challenges to which a defendant is entitled on the potential penalty for the charged *offense.* Because the habitual-offender statute does not create an offense, MCL 769.12; MSA 28.1084 does not conflict with the court rule. Defendant, charged as a fourth-felony habitual offender, was only entitled to five peremptory challenges. Therefore, the trial court correctly rejected his request for twenty peremptory challenges.

III

Defendant also contends that the trial court abused its discretion when it sentenced him to a prison term of forty to sixty years as a fourth-felony habitual offender convicted of extortion, a felony punishable by up to twenty years of imprisonment. Defendant contends that the length of his sentence is so excessive that it shocks the conscience, *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983), and cannot be served within his lifetime. *People v Moore,* 432 Mich 311; 439 NW2d

684 (1989). However, we decline to review this issue because the trial court did not have the benefit of the Supreme Court's recent decision in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), when it sentenced defendant. Therefore, we find it necessary to vacate the sentence imposed and remand for resentencing. We make no determination concerning the propriety of the sentence imposed by the trial court.

IV

Defendant contends that he was denied effective assistance of counsel because his attorney failed to pursue an interlocutory appeal or to investigate potential defense witnesses and divulged confidential information to the prosecution and trial court. However, we note that defendant has waived appellate review of this issue by failing to move for a new trial or for an evidentiary hearing pursuant to *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), because the alleged deficiencies in his trial counsel's performance are not apparent from the record. *People v Marji,* 180 Mich App 525, 533; 447 NW2d 835 (1989); *People v Sharbnow,* 174 Mich App 94, 106; 435 NW2d 772 (1989).

In conclusion, we affirm defendant's convictions, but remand for resentencing pursuant to *Milbourn.* We do not retain jurisdiction.