PEOPLE v BOATMAN

Docket No. 270564. Submitted November 9, 2006, at Detroit. Decided December 28, 2006, at 9:00 a.m.

Joe L. Boatman pleaded guilty in the Saginaw Circuit Court of resisting and obstructing a police officer, MCL 750.479(1)(b), and was sentenced as a fourth-offense habitual offender to a prison term of 3 to 15 years. The trial court, Leopold P. Borrello, J., denied the defendant's request to withdraw his plea, and the Court of Appeals denied the defendant's delayed application for leave to appeal. In lieu of granting leave to appeal, the Michigan Supreme Court remanded the case to the Court of Appeals for consideration as on leave granted of whether the defendant's plea was understanding despite the fact that he was not informed of the maximum possible sentence he could receive as an habitual offender. 475 Mich 862 (2006).

The Court of Appeals *held*:

1. The plain language of the court rule governing plea agreements requires only that a defendant be informed of the maximum possible prison sentence and mandatory minimum sentence for the charged offense. Accordingly, although the spirit of the rule would seem to encompass informing an habitual offender about the consequences of that status on sentencing, it is within the exclusive province of the Supreme Court to expand the court rule in this manner.

2. The trial court's failure to specify that it would be applying the sentencing guidelines for habitual offenders, coupled with the trial court's assurance that the defendant could withdraw his plea if it did not conform to his understanding of the plea agreement, constituted a procedural flaw that resulted in the failure to properly inform the defendant of the consequences of his plea, rendering it unintelligent.

Plea vacated and case remanded for further proceedings.

SERVITTO, P.J., concurred in the result only, expressing the view that MCR 6.302(B)(2) requires a trial court to advise a defendant of the maximum sentence that may result from his or her habitual-offender status.

1. CRIMINAL LAW — GUILTY PLEAS — HABITUAL OFFENDERS — UNDERSTANDING PLEAS — COURT RULES.

The court rule governing plea agreements requires only that a defendant be informed of the maximum possible prison sentence and the mandatory minimum sentence for the charged offense (MCR 6.302[B]).

2. CRIMINAL LAW — GUILTY PLEAS — HABITUAL OFFENDERS — UNDERSTANDING PLEAS — SENTENCING GUIDELINES.

A trial court's failure to inform a defendant who pleads guilty that the trial court will be imposing sentence using the guidelines applicable to habitual offenders may render the defendant's plea unintelligent.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *Randy L. Price*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Jacqueline J. McCann*) for the defendant.

Before: SERVITTO, P.J., and FITZGERALD and TALBOT, JJ.

TALBOT, J. This matter is on remand from the Michigan Supreme Court for consideration, as on leave granted, "of whether defendant's plea was understanding when defendant was not informed of the maximum possible sentence as an habitual offender." *People v Boatman*, 475 Mich 862 (2006). Defendant appeals the order denying his request to withdraw his 1999 guilty plea to a charge of resisting and obstructing a police officer, MCL 750.479(1)(b). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to a prison term of 3 to 15 years. When a motion to withdraw a plea is made following sentencing, the decision to grant the motion rests within the discretion of the trial court. The trial court's decision will not be disturbed on appeal absent a clear abuse of discretion that

resulted in a miscarriage of justice. *People v Eloby (After Remand)*, 215 Mich App 472, 475; 547 NW2d 48 (1996). We vacate defendant's plea and remand for further proceedings.

Initially, addressing only the specific question posed by the Supreme Court, we note that MCR 6.302(B) requires, in relevant part:

> An Understanding Plea. Speaking directly to the defendant or defendants, the court must advise the defendant or defendants of the following and determine that each defendant understands:
>
> * * *
>
> (2) the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law[.]

If the plain language of a court rule is unambiguous, courts " 'must enforce the meaning expressed, without further judicial construction or interpretation.' " *People v Phillips,* 468 Mich 583, 589; 663 NW2d 463 (2003), quoting *Grievance Administrator v Underwood,* 462 Mich 188, 193-194; 612 NW2d 116 (2000).

At the time of entry of defendant's plea, the trial court indicated the maximum sentence faced by defendant for the underlying charge of resisting and obstructing by inquiring, "Do you understand that you're pleading guilty to a felony—or to a misdemeanor, which carries with it a maximum penalty of two years in a state prison?" As such, defendant was informed of the maximum sentence for the charged "offense," because "[t]he habitual-offender statute does not create a substantive offense that is separate from and independent of the principal charge." *People v Oswald (After Remand),* 188 Mich App 1, 12; 469 NW2d 306 (1991). Nothing in the wording of the court rule can be con-

strued to require a trial court to address every possible configuration or consequence of sentencing. In accordance with the dictates of MCR 6.302(B)(2), when pleading guilty, the court rule requirement that a defendant be advised of the consequences of his or her plea does not encompass advice extending beyond the maximum possible sentence and any mandatory minimum sentence necessitated by law. See *People v Johnson,* 413 Mich 487, 490; 320 NW2d 876 (1982) (addressing a previous version of the rule, GCR 1963, 785.7). Although a guilty plea must be made "with knowledge of the consequences," *People v Schluter,* 204 Mich App 60, 66; 514 NW2d 489 (1994), "the trial judge need not inform the defendant of all sentence consequences—only the maximum sentence for the crime to which he was pleading guilty," *People v Jahner,* 433 Mich 490, 502; 446 NW2d 151 (1989), and "any mandatory minimum sentence required by law." MCR 6.302(B)(2). In reviewing adherence to the mandates of the court rule, a doctrine of "substantial compliance" applies. The doctrine holds that "[w]hether a particular departure from [the court rule] justifies or requires reversal for additional proceedings will depend on the nature of the noncompliance." *Guilty Plea Cases,* 395 Mich 96, 113; 235 NW2d 132 (1975) (addressing GCR 1963, 785.7). In this case, the trial court complied with the mandate of MCR 6.302(B)(2) by informing defendant of the maximum sentence for the charged offense of resisting and obstructing.

This Court has long recognized that a trial court is not required to advise a defendant of all potential sentencing consequences. Specifically, there exists "no authority that holds collateral consequences should be considered in allowing a defendant to withdraw his guilty plea after having been sentenced." *People v Davidovich,* 238 Mich App 422, 430; 606 NW2d 387

(1999); see also *Johnson, supra* at 490. However, because of the existence of specific and separate guidelines applicable to the sentencing of habitual offenders, the effect of a defendant's habitual-offender status on sentencing does not comprise a "collateral consequence." In addition, the existence of separate guidelines for use with habitual offenders creates a tension between the specific language and implied spirit of the court rule. Clearly, an important focus of MCR 6.302 is to ensure that any defendant who has entered into a sentencing agreement has made a knowing, understanding, and informed plea decision. This requires a defendant to be informed of the consequences of his or her plea and, necessarily, the resultant sentence. Unfortunately, the language of the court rule does not encompass a specific requirement to inform an habitual offender regarding the effect this status has on sentencing. This is at odds with the intent of the law, which is to ensure an informed decision by a defendant in accepting or entering into a plea agreement by requiring that the most significant repercussion of that agreement, the actual duration of the sentence to be imposed, be known and understood in advance.

Despite our recognition of the disparity between the actual language of the court rule, which requires that information related to the "offense" be conveyed to a defendant, and the spirit of the rule, which aims to ensure a knowing and informed plea decision, this Court lacks authority to expand the scope of the rule's language. Rather, we are constrained by our recognition that it is within the exclusive province of the Supreme Court to "promulgate and amend general rules governing practices and procedure." MCL 600.223. While we acknowledge that a defendant's status as an habitual offender and the commensurate guidelines enhancement applicable in sentencing may significantly affect

the attainment of an understanding plea, we respectfully submit that any expansion of the scope or language of MCR 6.302 to coincide with the clear intent of the rule must be initiated by the Supreme Court rather than through this Court's broadened interpretation of the existing language. We would further note concerns pertaining to the retrospective effect of such a determination by this Court and the potential to promote and incur an influx of appeals on this issue when compared to the orderly and restrictive prospective application of any rule change initiated by the Supreme Court.

In certain cases, such as this one, an obvious disparity will occur between an understanding of the sentence for the offense and the effect of the habitual-offender guidelines on that sentence. A review of the lower court record reveals a procedural failure by the trial court that must be addressed and that governs our ultimate ruling. Notably, although defendant acknowledged his status as a fourth-offense habitual offender, no mention was made during the plea hearing, sufficient to inform defendant, that the "guidelines" being referenced and intended for use in his sentencing would be those guidelines applicable to his habitual-offender status. Instead, the trial court referred to "guidelines" without specifying whether the offense guidelines or the habitual-offender guidelines would be implicated in his sentencing, then assured defendant that he would be permitted to withdraw his plea should sentencing not conform to the agreement as he understood it. Specifically, when discussing the plea and imposition of the "guidelines," the following discourse occurred:

*The Court:* It's my understanding, Mr. Boatman, that the plea agreement that's been entered into between you and your attorney and the prosecutor's office in this case is that the prosecutor is recommending to the Court that the Court stay within the guidelines in sentencing.

Is that your understanding of the plea agreement?

*Defendant*: Yes.

*The Court*: Has anyone represented to him what the guidelines are?

*Prosecutor*: No, Your Honor, I don't believe so.

\* \* \*

*Defense Counsel*: Yes, Your Honor, I have.

\* \* \*

*The Court*: What have you indicated to him?

*Defense Counsel*: Six to 12.

\* \* \*

*Prosecutor*: Your Honor, I don't know that the People would be stipulating to that as being—

*The Court*: I understand that, but so that we know that that's the representation that Ms. Boozer has made to Mr. Boatman, if the guidelines don't fall on what, we'll—we'll determine whether he's—whether he wants to withdraw his plea.

\* \* \*

*Prosecutor*: I've worked it five to 46 months.

A guilty plea "not only must be voluntary but must be [a] knowing, intelligent ac[t] done with sufficient awareness of the relevant circumstances and likely consequences." *People v Thew*, 201 Mich App 78, 95; 506 NW2d 547 (1993) (quotation omitted). In evaluating defendant's plea, we agree that there exists "no 'talismanic chant' that must be uttered by the trial court during plea proceedings." *Boatman, supra* at 863 (YOUNG, J., dissenting) (quotation omitted). However, it

is obvious to this Court that for a plea to be "under-standing," at a minimum, a defendant must be informed of the nature and consequences of his or her bargain. This would necessitate a designation of which guidelines are being agreed to in order "to inform the defendant of the most serious consequences he faces if he pleads guilty." *People v Shannon,* 134 Mich App 35, 38; 349 NW2d 813 (1984). At the time of defendant's plea, the trial court's reference to use of the "guide-lines" failed to specify whether the standard guidelines for the offense, or the enhanced guidelines consistent with defendant's habitual-offender status, would be used for sentencing. The existence of separate guide-lines specified for use with habitual offenders demon-strates the necessity of informing a defendant of the use of these guidelines to ensure "understanding" of the consequences of a plea, particularly under the circum-stances of this case where the difference in sentencing comprised a distinction between a misdemeanor and a felony, and a difference of 13 years in the sentence imposed. See MCL 750.479; MCL 769.10 *et seq.; People v DeLong,* 128 Mich App 1; 339 NW2d 659 (1983).

"The purpose of a plea colloquy is to protect the defendant from an unintelligent or involuntary plea." *People v Watkins,* 247 Mich App 14, 24; 634 NW2d 370 (2001), aff'd in part and mod in part 467 Mich 868 (2002) (quotation omitted). The failure of the trial court to specify that it would be using guidelines applicable to habitual offenders for sentencing constituted more than merely an imprecise recital. *People v Ingram,* 166 Mich App 433, 437; 424 NW2d 19 (1988). A review of the record demonstrates that this failure constituted a procedural flaw that resulted in the failure to properly inform defendant of the consequences of his plea, rendering it unintelligent.

Defendant entered his plea on the basis of an understanding that he would be sentenced in conformance with the "guidelines." However, throughout the entire discussion between the trial court and counsel, there is no indication that the guidelines being referenced were those applicable to defendant as a fourth-offense habitual offender. It is nonsensical to assume, particularly in light of the apparent confusion of defendant's own counsel regarding the applicable guidelines range, that defendant understood the consequences of his plea. This, when coupled with the trial court's own indication that defendant would be permitted to withdraw his plea if his sentencing did not conform to the guidelines as represented by his counsel, demonstrates that defendant's plea was not understanding, as required by MCR 6.302. On the sole basis of this procedural failure, we vacate and remand.

Defendant's plea is vacated, and we remand this matter to the trial court for further proceedings. We do not retain jurisdiction.

FITZGERALD, J., concurred.

SERVITTO, P.J. (*concurring*). I concur in the result only. I write separately because I believe MCR 6.302(B)(2) requires that a trial court advise a defendant of the maximum sentence he may be subject to as a result of his status as an habitual offender.

MCR 6.302(B)(2) provides that the court must advise the defendant of "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law" before accepting a plea of guilty. This rule has generally been found not to encompass advice beyond that specifically stated in the court rule. *People v Johnson*, 413 Mich 487, 490; 320 NW2d

876 (1982). While a guilty plea must be made "with knowledge of the consequences," *People v Schluter*, 204 Mich App 60, 66; 514 NW2d 489 (1994), "the trial judge need not inform the defendant of all sentence consequences—only the maximum sentence for the crime to which he was pleading guilty," *People v Jahner*, 433 Mich 490, 502; 446 NW2d 490 (1989), and "any mandatory minimum sentence required by law." MCR 6.302(B)(2).

Nevertheless, because a defendant's status as an habitual offender directly affects the possible maximum sentence he or she may receive for the underlying offense, I believe that advising a defendant of the maximum sentence he or she will specifically be facing when habitual status is taken into account falls within the ambit of MCR 6.302(B)(2). To hold otherwise would undermine the goal of ensuring that guilty pleas are made voluntarily.

It has been clear for some time that the habitual-offender statute does not create a substantive offense that is separate from and independent of the principal charge. *People v Oswald (After Remand)*, 188 Mich App 1, 12; 469 NW2d 306 (1991). There is also, as a result, no separate and distinct sentence imposed on an habitual offender. Rather, the habitual-offender statute provides possible enhancements directly placed on the sentence imposed for the underlying offense. Where a defendant's habitual-offender status leads to no separate sentence, such status could only be viewed as part and parcel of the charged crime. By failing to advise a defendant of the potential maximum sentence that may be imposed by virtue of his or her status as an habitual offender, a trial court is not advising of the "true" potential maximum sentence.

As pointed out by the majority, when the sentence for the underlying offense is directly affected, the higher

potential maximum sentence is not simply a collateral matter. This is particularly so when, as here, the difference between the maximum sentence for a first-time offender and defendant, as a fourth-offense habitual offender, is 13 years. Had defendant known at the time of the plea that the maximum sentence was that long, he might not have pleaded guilty. I would therefore hold that the purpose of MCR 6.302(B)(2) can be fairly served and result in no inequity only if an habitual offender is advised of the potential maximum sentence he or she faces for the offense *as an habitual offender*.