# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 18, 2010

139540

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

                                         SC: 139540
                                         COA: 285402
                                         Oakland CC: 2007-215779-FH

BERNARD WILLIAM KADE,
      Defendant-Appellant.

_____/

On May 11, 2010, the Court heard oral argument on the application for leave to appeal the July 7, 2009 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

KELLY, C.J. (*concurring*).

I concur with the Court's order denying defendant's application for leave to appeal. I write separately to discuss MCR 6.302(B), what I believe to be the Court of Appeals incorrect interpretation of that rule in *People v Boatman*,[1] and why this Court should amend the rule.

### THE EFFECT OF THE HABITUAL OFFENDER ENHANCEMENT

Defendant was charged with third-degree fleeing and eluding and driving with a suspended license, second offense. At his arraignment on July 31, 2007, he pled guilty to the charges. The trial court advised him that the maximum possible sentence for fleeing and eluding is five years in prison. On August 2, 2007, the prosecutor filed a timely supplemental information under MCL 769.10 and MCL 769.13(3) charging defendant as a third habitual offender. The court subsequently sentenced defendant to 30 months to 10 years in prison as a third habitual offender. Without the enhancement, defendant's guidelines range would have been 7 to 34 months in prison.

---

[1] *People v Boatman*, 273 Mich App 405 (2006).

Defendant sought withdrawal of his plea, vacation of his sentence, and resentencing. He claimed that his plea was not knowing and voluntary because the judge had not informed him of the enhanced maximum sentence for his offense. The judge denied the motions. He ruled that he had informed defendant of the consequences of his plea and that defendant had said he pleaded guilty understandingly, voluntarily, and without being coerced or promised anything.

The Court of Appeals granted defendant's application for leave to appeal and affirmed the convictions and sentences.[2] It ruled that defendant was not entitled to be informed of the enhanced maximum sentence under MCR 6.302(B). We granted oral argument on defendant's application for leave to appeal to this Court.[3]

Defendant argues that he should be allowed to withdraw his plea because he had not been informed of the enhanced maximum sentence for the offense when he pled guilty. He relies on MCR 6.302(B).[4] He also argues that the Court of Appeals incorrectly decided *Boatman* four years ago.

*PEOPLE V BOATMAN*

---

[2] *People v Kade*, unpublished opinion per curiam of the Court of Appeals, issued July 7, 2009 (Docket No. 285402).

[3] *People v Kade*, 485 Mich 1039 (2010).

[4] MCR 6.302 provides, in pertinent part:

> (A) Plea Requirements. The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E).
>
> (B) An Understanding Plea. Speaking directly to the defendant or defendants, the court must advise the defendant or defendants of the following and determine that each defendant understands:
>
> > (1) the name of the offense to which the defendant is pleading; the court is not obliged to explain the elements of the offense, or possible defenses;
> >
> > (2) *the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law*. [Emphasis added.]

In *Boatman*, the judge informed the defendant at his plea hearing that the maximum sentence for the offense with which he was charged was two years. Defendant had already been informed that he was also being charged as an habitual offender. His maximum possible sentence was 15 years. His plea agreement was that his minimum sentence would be within the sentencing guidelines range. However, at the plea hearing, confusion arose over the applicable guidelines range, with the prosecutor referring to the enhanced range and defense counsel referring to the unenhanced range. The judge sentenced the defendant to 3 to 15 years imprisonment, which was within the enhanced range. The defendant moved to set aside his plea because, when he agreed to it, he believed his maximum sentence would be two years. When his motion was denied, he appealed to the Court of Appeals, which denied leave to appeal. This Court remanded the case to the Court of Appeals for consideration as on leave granted.[5]

On remand, the Court of Appeals concluded that a trial court need not inform a defendant of the enhanced maximum sentence in order to comply with MCR 6.302(B). The court reasoned that the wording of the court rule requires only that a defendant be advised of the maximum possible sentence and any mandatory minimum sentence. However, the court conceded that the wording does not embody the rule's spirit:

> [T]he existence of separate guidelines for use with habitual offenders creates a tension between the specific language and implied spirit of the court rule. Clearly, an important focus of MCR 6.302 is to assure that any defendant who has entered into a sentencing agreement has made a knowing, understanding, and informed plea decision. This requires a defendant to be informed of the consequences of his or her plea and, necessarily, the resultant sentence. Unfortunately, the language of the court rule does not encompass a specific requirement to inform a habitual offender regarding the effect this status has on sentencing. This is at odds with the intent of the law, which is to assure an informed decision by a defendant in accepting or entering into a plea agreement by requiring that the most significant repercussion of that agreement, by actual duration of the sentence to be imposed, be known and understood in advance.[6]

The Court of Appeals concluded that it lacked the authority to expand the scope of the rule's language. But it found that the defendant was entitled to withdraw his plea because of the confusion over the applicable guidelines. In doing so, the court explicitly stated that the defendant was not entitled to relief under the court rule.

Concurring in result only, Judge SERVITTO opined that a defendant's status as an habitual offender directly affects the possible maximum sentence for the underlying

---

[5] *People v Boatman*, 475 Mich 862 (2006).

[6] *Boatman*, 273 Mich App at 409.

offense. As a consequence, she wrote, the court rule requires a trial court to advise a defendant of the maximum possible sentence, including an habitual offender enhancement. She added that "[t]o hold otherwise would undermine the goal of ensuring that guilty pleas are made voluntarily."[7]

The Court of Appeals decision in *Boatman* was not appealed to this Court, and this Court has never addressed the proper interpretation and scope of the rule.

## *BOATMAN* SHOULD BE OVERRULED

I concur with the Court's order denying defendant's application for leave to appeal because of this case's unique procedural posture. Defendant has already been released on parole, and his parole is scheduled to be discharged on September 22, 2010. It seems unlikely that the Court can afford him meaningful relief. However, I believe that the Court should prevent a similar injustice from occurring in a future case.

MCL 769.10, the habitual offender statute, provides possible sentence enhancements that apply directly to the sentence imposed for an underlying offense. This enhancement merges with the underlying offense rather than constituting an independent offense.[8]

MCR 6.302(B)(2) requires that a defendant be informed of "the maximum possible prison sentence" for *the offense*. I believe that an habitual offender enhancement, which lengthens the maximum sentence for "the offense," falls within this rule because the enhanced maximum becomes the "maximum possible prison sentence" for the principal offense. Therefore, as Judge SERVITTO noted, "[b]y failing to advise a defendant of the potential maximum sentence that may be imposed by virtue of his or her status as an habitual offender, a trial court is not advising of the true potential maximum sentence."[9]

I also believe that *Boatman*'s analysis was logically flawed. The Court of Appeals stated that "defendant was informed of the maximum sentence for the charged 'offense,' because '[t]he habitual-offender statute does not create a substantive offense that is separate from and independent of the principal charge.'"[10] Yet if an habitual offender

---

[7] *Id*. at 414 (SERVITTO, J., concurring in result only).

[8] *People v Oswald (After Remand)*, 188 Mich App 1, 12 (1991).

[9] *Boatman*, 273 Mich at 414 (SERVITTO, J., concurring in result only) (quotation marks omitted).

[10] *Id*. at 407, citing *Oswald (After Remand)*, 188 Mich App at 12 (1991).

supplement is not a separate offense, then it logically follows that it must be linked to, or considered one with, the underlying offense. As such, to comply with MCR 6.302(B)(2), a defendant must be made aware of the consequences of "the offense" including any habitual offender enhancement.

I nonetheless recognize that MCR 6.302(B)(2) and MCL 769.13(3)[11] arguably conflict. The rule fosters knowing and intelligent pleas by requiring that a defendant be informed of the maximum possible time he or she may face in prison. The statute permits a prosecutor to file notice of an habitual offender enhancement after entry of a plea. Accordingly, the Court has taken steps administratively to consider amending the rule to remedy any perceived or actual tension between it and the statute.[12]

In this case, the prosecutor had not filed a supplemental information when defendant pled guilty. Thus, the trial court correctly informed defendant of the maximum possible sentence he faced under the facts as they existed at the time. That said, the entire period that a defendant may serve in prison strikes at the very essence of a defendant's decision to plead guilty. When a defendant makes that decision, he or she should know the total duration of his or her potential incarceration. Therefore, as a matter of basic fairness, we should amend MCR 6.302 to allow a defendant to withdraw his or her plea if, as in this case, the prosecutor files an habitual offender supplement after the plea is entered.

## CONCLUSION

I concur with the Court's order denying defendant's application for leave to appeal. However, I urge interested parties to submit their views when the Court considers publishing a change to MCR 6.302 for public comment and hearing. I believe that MCR 6.302 should be amended to prevent the situation defendant faced in this case from arising again.

CAVANAGH, MARKMAN, and HATHAWAY, JJ., join the statement of KELLY, C.J.

---

[11] MCL 769.13(3) governs the timing of habitual offender enhancements. It specifically provides that the prosecutor may file a notice of enhancement after a defendant pleads guilty at his or her arraignment.

[12] ADM File 2010-20.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 18, 2010

_____
Clerk

0615