# Syllabus

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
John O. Juroszek

## PEOPLE v BROWN

Docket No. 143733. Argued April 5, 2012. Decided August 16, 2012.

Shawn Thomas Brown pleaded guilty in the Kalamazoo Circuit Court of second-degree home invasion, MCL 750.110a(3), as a second-offense habitual offender, MCL 769.10. He was not informed by the court, Gary C. Giguere, J., of his maximum possible sentence as an habitual offender before the plea was accepted. Rather, defendant had been informed that the maximum penalty for the home-invasion offense was 15 years in prison, but he was ultimately sentenced to a prison term of 6 years and 3 months to 22 years and 6 months in accordance with the habitual-offender enhancement. Defendant did not object at sentencing, but later moved to withdraw his plea or for resentencing, which the court denied. Defendant appealed. The Court of Appeals, CAVANAGH, P.J., and SAAD, J. (GLEICHER, J., dissenting), denied defendant's application for leave to appeal in an unpublished order, entered August 22, 2011 (Docket No. 305047). The Supreme Court ordered and heard oral argument on whether to grant defendant's application for leave to appeal or take other peremptory action. 490 Mich 976 (2011).

In an opinion by Justice MARILYN KELLY, joined by Justices CAVANAGH, MARKMAN, HATHAWAY, and MARY BETH KELLY, the Supreme Court *held*:

Under MCR 6.302(B)(2), a trial court must apprise a defendant of his or her maximum possible sentence as an habitual offender before accepting a plea. If this procedure is not followed, the defendant may allow the plea and sentence to stand or withdraw the plea, in which case a court must vacate the defendant's conviction and sentence.

1. Under MCR 6.302(A), a defendant's guilty plea must be understanding, voluntary, and accurate. For it to be understanding, MCR 6.302(B)(2) requires the trial court to advise the defendant before accepting his or her plea of the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law. A guilty plea is involuntary if the defendant pleading guilty is not informed of the maximum sentence that could be imposed.

2. The habitual-offender statutes, MCL 769.10 *et seq.*, allow the enhancement of a defendant's sentence on the basis of his or her prior felonies, but do not create a substantive offense independent of the principal charge. When a defendant is subject to an enhanced sentence as an habitual offender, that enhanced sentence is part of the maximum prison sentence described in MCR 6.302(B)(2). The Court of Appeals' decision in *People v Boatman*, 273 Mich App 405 (2006), which held to the contrary, is overruled. To hold otherwise would allow a

defendant to plead guilty without knowing the true consequences of his or her plea, which in turn would prevent the defendant from making an understanding plea.

3. There was a clear defect in the plea proceeding in this case, and defendant's plea was not an understanding plea as required by MCR 6.302(B)(2) because he was not properly informed of the potential maximum sentence for second-degree home invasion as enhanced by his second-offense habitual-offender status before his plea was accepted.

4. The remedy for a violation of MCR 6.302(B)(2) is set forth in MCR 6.310(C), which provides that when there is a defect in the plea-taking process, the defendant may either allow the plea and sentence to stand or withdraw the plea, in which case the trial court must vacate the defendant's conviction and sentence. In the latter event, the matter may proceed to trial. The remedy set forth in MCR 6.310(C) also applies when the defendant is not notified by the prosecution of an habitual-offender sentence enhancement until after pleading guilty, as allowed by MCL 769.13(3).

Remanded for further proceedings.

Chief Justice YOUNG, joined by Justice ZAHRA, concurring in part and dissenting in part, agreed with the majority that MCR 6.310(C) provides the sole remedy for violations of MCR 6.302(B)(2). In accordance with his prior dissenting statement in *Boatman*, however, Chief Justice YOUNG would have held that MCR 6.302(B)(2) does not require a trial court to inform a defendant of the maximum possible sentence following enhancement resulting from the defendant's status as an habitual offender. The true maximum sentence for second-degree home invasion is that described in MCL 750.110a(6), the statute that defines the offense. Accordingly, defendant's plea was valid because the trial court accurately informed him that the maximum possible sentence for the offense was 15 years in prison.

©2012 State of Michigan

# Opinion

Chief Justice:   Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED AUGUST 16, 2012

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v               No. 143733

SHAWN THOMAS BROWN,

     Defendant-Appellant.

BEFORE THE ENTIRE BENCH

MARILYN KELLY, J.

This criminal law case involves a defendant who was not informed of the maximum sentence that could be imposed on him before he pleaded guilty. MCR 6.302(B)(2) requires that the court notify a defendant of the maximum possible prison sentence. Defendant pleaded guilty of second-degree home invasion as a second-offense habitual offender, but the trial court never advised him of his maximum possible sentence as an habitual offender. We ordered oral argument on defendant's application for leave

to appeal to determine if the court rule requires such notice.[1]  We also asked the parties to address what relief, if any, is available to a defendant under the circumstances of this case.[2]

We hold that MCR 6.302(B)(2) requires the trial court to apprise a defendant of his or her maximum possible prison sentence as an habitual offender before accepting a guilty plea.  Because defendant in this case was not so apprised, his guilty plea was defective.  We also hold that MCR 6.310(C) provides the sole remedy available to a defendant in these circumstances.  Hence, pursuant to MCR 6.310(C), defendant may allow his plea and sentence to stand or withdraw his plea, in which case the court shall vacate his conviction and sentence.  In the latter event, the matter may proceed to trial.  Accordingly, we remand this case to the trial court for further proceedings.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant conspired with his girlfriend to rob her employer's home.  He stole $10,300 worth of coins, currency, and guns from the unlocked home and shared the proceeds with her.  He was apprehended and charged with second-degree home

---

[1] *People v Brown*, 490 Mich 976 (2011).

[2] *Id*.

2

invasion,[3] larceny of a firearm,[4] being a felon in possession of a firearm,[5] and larceny in a building[6] as a fourth-offense habitual offender.[7]

Defendant pleaded guilty as a second-offense habitual offender[8] to second-degree home invasion in exchange for dismissal of the other charges. At his plea hearing, the trial judge explained the maximum sentence, advising him that second-degree home invasion "is a felony; it is punishable by up to 15 years in the state prison. Do you understand?" Defendant confirmed that he understood. The judge sentenced him to a prison term of 6 years and 3 months to 22 years and 6 months and ordered him to pay restitution.[9] He did not object to the maximum sentence.

Defendant later moved to withdraw his plea or for resentencing. He argued that he should be resentenced without the habitual-offender enhancement because the trial judge had failed to advise him of the enhanced maximum sentence before taking the guilty plea.

---

[3] MCL 750.110a(3).

[4] MCL 750.357b.

[5] MCL 750.224f.

[6] MCL 750.360.

[7] MCL 769.12.

[8] MCL 769.10.

[9] Defendant's challenge to the order of restitution is not before this Court and will not be discussed.

The judge denied the motion, relying on *People v Boatman*[10] and declining to decide whether various orders of this Court[11] had impliedly overruled *Boatman*.

The Court of Appeals denied defendant's application for leave to appeal in a split decision; Judge GLEICHER would have granted the application. Defendant applied for leave to appeal in this Court, and we ordered and heard oral argument on whether to grant the application or take other action.[12]

### STANDARD OF REVIEW AND LEGAL BACKGROUND

This Court reviews for an abuse of discretion a trial court's ruling on a motion to withdraw a plea.[13] A defendant pleading guilty must enter an understanding, voluntary, and accurate plea.[14] MCR 6.302(B)(2) states that for a plea to be understanding, the defendant must be informed of "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law[.]"

The habitual-offender statutes, MCL 769.10 *et seq*., provide enhancement of a defendant's sentence on the basis of prior felony convictions. They do not create a substantive offense independent of the principal charge. "Rather, it is a sentence-

---

[10] *People v Boatman*, 273 Mich App 405; 703 NW2d 251 (2006).

[11] See *People v Ruffin*, 488 Mich 891 (2010), and *People v Lofton*, 488 Mich 924 (2010).

[12] *Brown*, 490 Mich 976.

[13] *People v Lang*, 381 Mich 393, 398-399; 162 NW2d 143 (1968).

[14] MCR 6.302(A).

4

enhancement procedure with a deterrent and punitive purpose."[15]  Under MCL 769.13(3), the prosecution is permitted to file notice of an habitual-offender enhancement after a defendant pleads guilty.[16]

This Court has never determined whether, in order to comply with MCR 6.302(B)(2), a trial court must to inform a defendant of the maximum possible enhanced sentence before taking a guilty plea.  The question was presented six years ago in *People v Boatman*.[17]  In that case, the defendant pleaded guilty of resisting and obstructing a police officer as a fourth-offense habitual offender.  The plea agreement required him to be sentenced within the sentencing guidelines.

---

[15] *People v Oswald (After Remand)*, 188 Mich App 1, 12; 469 NW2d 306 (1991); see *People v Kade*, 486 Mich 978, 981; 783 NW2d 102 (2010) (MARILYN KELLY, C.J., concurring), citing *Oswald*.

[16] MCL 769.13(3) provides that

> [t]he prosecuting attorney may file notice of intent to seek an enhanced sentence after the defendant has been convicted of the underlying offense or a lesser offense, upon his or her plea of guilty or nolo contendere if the defendant pleads guilty or nolo contendere at the arraignment on the information charging the underlying offense, or within the time allowed for filing of the notice under subsection (1).

MCL 769.13(1) contains additional time restrictions for seeking a sentence enhancement under the habitual-offender statutes and requires the prosecuting attorney to file "a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense."

[17] *People v Boatman*, 475 Mich 862 (2006).

5

The trial court informed Mr. Boatman that his maximum sentence would be two years' incarceration, the correct sentence for an unenhanced charge of resisting and obstructing a police officer. With enhancement, however, the maximum sentence was 15 years. Boatman was eventually sentenced to 3 to 15 years in prison. He unsuccessfully moved the trial court to set aside his plea, and the Court of Appeals denied him leave to appeal. This Court remanded the case to the Court of Appeals as on leave granted for consideration of whether the defendant's plea was understanding.[18]

On remand, in a split, published decision, the Court of Appeals held in *Boatman* that MCR 6.302(B)(2) requires the trial court to inform a defendant of only the maximum sentence for the underlying offense. It does not require that he or she be informed before pleading guilty of the enhancement created by habitual-offender status. The Court concluded that Boatman

> was informed of the maximum sentence for the charged "offense," because "[t]he habitual-offender statute does not create a substantive offense that is separate from and independent of the principal charge." Nothing in the wording of the court rule can be construed to require a trial court to address every possible configuration or consequence of sentencing. In accordance with the dictates of MCR 6.302(B)(2), when pleading guilty, the court rule requirement that a defendant be advised of the consequences of his or her plea does not encompass advice extending beyond the maximum possible sentence and any mandatory minimum sentence necessitated by law.[19]

The *Boatman* Court recognized that MCR 6.302 "requires a defendant to be informed of the consequences of his or her plea and, necessarily, the resultant

---

[18] *Id*.

[19] *Boatman*, 273 Mich App at 407-408 (citation omitted).

6

sentence."[20] Nonetheless, it concluded that MCR 6.302 does not require notification of the enhanced sentence, even though this conclusion violated the intent of the rule. No appeal was taken from the decision.

Concurring in the result only in *Boatman*, Judge SERVITTO would have required trial courts to advise a defendant of the maximum sentence as enhanced by his or her habitual-offender status. She reasoned that this status directly affects the possible maximum sentence for the underlying offense, and she opined that "[w]here a defendant's habitual-offender status leads to no separate sentence, such status could only be viewed as part and parcel of the charged crime."[21]

This Court has since expressed disapproval with the holding of *Boatman*. In *People v Kade*, in a statement joined by Justices CAVANAGH, MARKMAN, and HATHAWAY, I wrote that *Boatman* should be overruled.[22] Since *Kade* was decided, two decisions of this Court have suggested that *Boatman* is no longer good law without expressly overruling it.

In *People v Ruffin*, the defendant was incorrectly told that his maximum enhanced sentence was 30 years' imprisonment.[23] In reality, as a third-offense habitual offender, the defendant was subject to a maximum of 40 years in prison. This Court vacated the sentence and remanded the case to the trial court to allow the defendant to withdraw his

---

[20] *Id*. at 409.

[21] *Id*. at 414 (SERVITTO, J., concurring in result only).

[22] *Kade*, 486 Mich at 981-982 (MARILYN KELLY, C.J., concurring).

[23] *Ruffin*, 488 Mich at 891.

7

plea or be resentenced to no more than 30 years' imprisonment. We noted, in support of

our determination to allow the defendant to be resentenced to the unenhanced sentence,

that the prosecution had conceded that it was the appropriate remedy.[24]

Similarly, in *People v Lofton*,[25] the defendant was an habitual offender and was

not informed of the enhanced possible maximum sentence before he pleaded guilty. The

trial court told him that a felony-firearm conviction would result in a 2-year prison

sentence. However, at sentencing, the court imposed a 5-year enhanced sentence as

required by statute.[26] The defendant did not object. We remanded the case to the trial

court to allow him to withdraw his plea or be resentenced to a 2-year sentence of

imprisonment on the felony-firearm conviction.[27]

Plea withdrawals after sentencing are governed by MCR 6.310(C), which

provides:

> Motion to Withdraw Plea After Sentence. The defendant may file a
> motion to withdraw the plea within 6 months after sentence. Thereafter, the
> defendant may seek relief only in accordance with the procedure set forth in
> subchapter 6.500. *If the trial court determines that there was an error in the*
> *plea proceeding that would entitle the defendant to have the plea set aside,*
> *the court must give the advice or make the inquiries necessary to rectify the*
> *error and then give the defendant the opportunity to elect to allow the plea*
> *and sentence to stand or to withdraw the plea.* If the defendant elects to
> allow the plea and sentence to stand, the additional advice given and

---

[24] *Id*.

[25] *Lofton*, 488 Mich at 924.

[26] MCL 750.227b(1).

[27] *Lofton*, 488 Mich at 924.

8

inquiries made become part of the plea proceeding for the purposes of further proceedings, including appeals.[28]

A defendant seeking to withdraw his or her plea after sentencing must demonstrate a defect in the plea-taking process.[29]

THE PROPER INTERPRETATION OF MCR 6.302(B)(2) AND ITS APPLICATION

In its decision in *Boatman*, the Court of Appeals accurately stated that "an important focus of MCR 6.302 is to ensure that any defendant who has entered into a sentencing agreement has made a knowing, understanding, and informed plea decision."[30]  It also noted that "[t]his requires a defendant to be informed of the consequences of his or her plea and, necessarily, the resultant sentence."[31]  Nevertheless, the Court of Appeals refused to grant relief because the language of MCR 6.302(B)(2) does not specifically require that an habitual offender be advised regarding the effect habitual-offender status has on sentencing.[32]

We disagree with *Boatman* and overrule that decision.  MCR 6.302(B)(2) states that the trial court "must advise the defendant . . . and determine that each defendant understands . . . the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law[.]"  We hold that, before pleading guilty, a defendant must be notified of the maximum possible prison sentence with habitual-

---

[28] Emphasis added.

[29] *People v Montrose (After Remand)*, 201 Mich App 378, 380; 506 NW2d 565 (1993).

[30] *Boatman*, 273 Mich App at 409.

[31] *Id*.

[32] *Id*.

9

offender enhancement because the enhanced maximum becomes the "maximum possible prison sentence" for the principal offense.

By not telling a defendant the potential maximum sentence because of his or her habitual-offender status, "a trial court is not advising of the 'true' potential maximum sentence."[33] Today's holding accurately reflects the intent of MCR 6.302(B)(2), which is that a defendant be informed beforehand of the maximum sentence that would follow his or her plea of guilty.[34]

In the case before us, there was a clear defect in the plea proceedings. Because defendant was not accurately informed of the consequences of his plea as a second-offense habitual offender, he was not able to make an understanding plea under MCR 6.302(B).[35] We must thus decide what remedies are available to him.

---

[33] *Boatman*, 273 Mich App at 414 (SERVITTO, J., concurring in result only).

[34] The concurrence/dissent contends that

> the court rule actually and explicitly requires only that the court inform a defendant of the maximum possible prison sentence *for the offense* to which the defendant pleads guilty and does not require the court to inform a defendant of the possible sentencing enhancement resulting from his status as an habitual offender.

*Post* at 1. However, as was explained in *Kade*, "an habitual offender supplement is not a separate offense," and thus "it logically follows that it must be linked to, or considered one with, the underlying offense. As such, to comply with MCR 6.302(B)(2), a defendant must be made aware of the consequences of 'the offense' including any habitual offender enhancement." *Kade*, 486 Mich at 981 (MARILYN KELLY, C.J., concurring).

[35] We note that *People v Cole*, 491 Mich 325; ___ NW2d ___ (2012) supports our holding that the plea defendant entered was defective. There, the defendant was not informed before pleading guilty to second-degree criminal sexual conduct that he was required to be placed on lifetime electronic monitoring pursuant to MCL 750.520c(2)(b).

THE PROPER REMEDY FOR A VIOLATION OF MCR 6.302(B)

We determined in 1981 in *People v Jones* that a failure to advise a defendant of the maximum possible prison sentence before taking a guilty plea constitutes an error requiring reversal.[36] This Court required the trial court to set aside the defendant's plea-based convictions.[37] We reaffirm that holding today while incorporating MCR 6.310(C)

---

We held that "the 'understanding, voluntary, and accurate' components of [MCR 6.302(A)] are premised on the requirements of constitutional due process, which might not be entirely satisfied by compliance with [MCR 6.302(B) through (D)." *Id*. at 332.

The voluntariness requirement mandates that a defendant entering a plea be "fully aware of the direct consequences" of the plea. *Brady v United States*, 397 US 742, 755; 90 S Ct 1463; 25 L Ed 2d 747 (1970). "The most obvious 'direct consequence' of a conviction is the penalty to be imposed," thus requiring that a defendant be notified of the sentence he or she will be forced to serve because of the plea. *Blankenship v State*, 858 SW2d 897, 905 (Tenn, 1993). It is therefore apparent that habitual-offender enhancement is a direct consequence of pleading guilty because it affects the defendant's sentence. Thus, a defendant must be fully aware of the consequences of that enhancement before pleading guilty.

Additionally, in *Cole*, 491 Mich at 334 we noted that the determination of whether a statute imposes punishment can begin and end with a finding that the legislative purpose was to impose punishment. See *Smith v Doe*, 538 US 84, 92; 123 S Ct 1140; 155 L Ed 2d 164 (2003). Our courts have consistently concluded that the habitual-offender statutes provide "a sentence-enhancement procedure with a deterrent and punitive purpose." *Oswald*, 188 Mich App at 12. Following the *Smith v Doe* paradigm, we conclude that an habitual-offender sentence enhancement constitutes a "direct" consequence of a guilty or no-contest plea and thus requires notice before a plea is taken. *Id.* at 12; see *Boatman*, 475 Mich 862, 862-863 (2006) (YOUNG, J., dissenting).

[36] *People v Jones*, 410 Mich 407, 411; 301 NW2d 882 (1981). In *People v Jackson*, 417 Mich 243, 246; 334 NW2d 371 (1983), this Court limited the application of *Jones*. It held that automatic reversal is not required for a failure to give advice concerning the mandatory minimum and maximum sentences if the defendant is sentenced pursuant to a sentencing agreement.

[37] *Jones*, 410 Mich at 412.

11

to permit the defendant to elect either to allow the plea and sentence to stand or to withdraw the plea. A brief review of the history underlying the holding in *Jones* is instructive.

In 1974, in *People v Shekoski*,[38] we adopted a "strict adherence" requirement for procedures governing the acceptance of guilty pleas.[39] Our order in that case stated "that strict adherence to those requirements is mandatory and that neither substantial compliance nor the absence of prejudicial error will be deemed sufficient."[40]

The next year, in *Guilty Plea Cases*, we renounced *Shekoski* and adopted a "substantial compliance" test for errors in plea proceedings.[41] However, we retained a rule that required reversal for failure to provide advice concerning the maximum possible sentence and any mandatory minimum term.[42]

In *Guilty Plea Cases*, a defendant was informed that by pleading guilty of armed robbery, he was subject to a possible sentence of "up to life." But he was not advised that

---

[38] *People v Shekoski*, 393 Mich 134; 224 NW2d 656 (1974).

[39] This court first adopted these procedures in 1973. 389 Mich lv-lvii. They are currently set forth in MCR 6.302.

[40] *Shekoski*, 393 Mich at 134.

[41] *Guilty Plea Cases*, 395 Mich 96, 113; 235 NW2d 132 (1975) ("Whether a particular departure from Rule 785.7 [now MCR 6.302] justifies or requires reversal or remand for additional proceedings will depend on the nature of the noncompliance.").

[42] *Id*. at 117-118. In addition, the Court retained a rule of automatic reversal for the failure to provide advice concerning three matters: (1) the presumption of innocence, (2) the consequences of a plea on probation or parole, and (3) the rights set forth in *People v Jaworski*, 387 Mich 21; 194 NW2d 868 (1972): the right to a jury trial, the right to confront one's accusers, and the right to remain silent. *Guilty Plea Cases*, 395 Mich at 118-121.

12

he might be ineligible for probation.[43]  We recognized that the precursor of MCR 6.302(B)(2)[44] "[did] not require the judge to inform the defendant of all sentence consequences—only the maximum sentence, any mandatory minimum," and "the possible effect on [the defendant's] status as a probationer or parolee."[45]  We concluded that a failure to impart the information required by MCR 6.302(B)(2) continues to require reversal.[46]

In 2001, in the case of *People v Saffold*,[47] we elaborated on the substantial-compliance doctrine.  Both the majority and the dissent agreed that automatic reversal is not required when a trial court fails to advise a defendant that, by pleading guilty, he or she waives the right to be presumed innocent.  Both agreed also that "substantial compliance with MCR 6.302, with regard to the right to be presumed innocent, is all that is required," although the majority and dissent did not agree about the application of the

---

[43] *Id*. at 118.

[44] When a criminal defendant stated his intent to plead guilty or to plead nolo contendere, GCR 1963, 785.7(1)(b) stated that the trial court

> shall not accept a plea of guilty or nolo contendere without first personally addressing the defendant and informing him of and determining that he understands the following.

> *  *  *

> (b) the maximum sentence and the mandatory minimum sentence, if any, for the offense to which the plea is offered.

[45] *Guilty Plea Cases*, 395 Mich at 118.

[46] *Id*.  We note that *Guilty Plea Cases* predates our adoption of MCR 6.310(C).

[47] *People v Saffold*, 465 Mich 268, 271, 278-280, 287; 631 NW2d 320 (2001).

13

substantial-compliance doctrine in that case.[48] *Saffold* is not applicable here, however, because it involved only rights that a defendant gives up by not going to trial[49] and the effect of a guilty plea on those rights.

The distinctions we have drawn are supported by our court rules, which differentiate a defendant's trial rights from the consequences of a guilty plea on a defendant's sentence. For example, MCR 6.302(B)(5) allows a written waiver of the trial rights found in MCR 6.302(B)(3). It does not, however, allow a written waiver of the requirement under MCR 6.302(B)(2) that is involved in the current case. Because trial rights and sentencing consequences are distinct, *Saffold* does not apply to our analysis of MCR 6.302(B)(2). And it does not apply to how the statute relates to a defendant's right to be informed of his or her maximum possible prison sentence.

We continue to recognize the distinction we drew in *Guilty Plea Cases* between information about a defendant's trial rights and information about a defendant's sentence. We note that MCR 6.310(C) now provides the proper remedy for a plea that is defective under MCR 6.302(B)(2), which is to allow the defendant the opportunity to withdraw his or her plea.

---

[48] *Id*. at 287 (MARKMAN, J., dissenting).

[49] See MCR 6.302(B)(3). These rights include the right (a) to be tried by a jury, (b) to be presumed innocent until proved guilty, (c) to have the prosecutor prove beyond a reasonable doubt that the defendant is guilty, (d) to have the witnesses against the defendant appear at the trial, (e) to question the witnesses against the defendant, (f) to have the court order any witnesses the defendant has for the defense to appear at the trial, (g) to remain silent during the trial, (h) to not have that silence used against the defendant, and (i) to testify at the trial if the defendant wants to testify. *Id*.

Additionally, we are not alone in concluding that the failure to inform a defendant of the maximum sentence that could be imposed before he or she pleads guilty renders a plea involuntary.[50] Caselaw supports this determination and holds that an involuntary plea violates the state and federal Due Process Clauses.[51] For the reasons stated earlier, we hold that defendant entered a defective plea because it was not an understanding plea under MCR 6.302(B)(2). We remand this matter to the trial court so that defendant may be afforded the remedy provided in MCR 6.310(C), which provides in pertinent part:

> If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea.

Because defendant was not informed of his maximum possible enhanced prison sentence before he pleaded guilty, he is entitled to the remedy provided by MCR 6.310(C). Thus, we remand this case to the trial court. On remand, defendant must be given the option of allowing his plea and sentence to stand or of withdrawing his plea. If the plea is withdrawn, the trial court must vacate his conviction and sentence and the matter may proceed to trial.

We reject defendant's argument that he is entitled to be resentenced in accordance with the unenhanced maximum sentence of which he was informed at the plea hearing.

---

[50] See, e.g., *King v Dutton*, 17 F3d 151, 154 (CA 6, 1994).

[51] See *McCarthy v United States*, 394 US 459, 466; 89 S Ct 1166; 22 L Ed 2d 418 (1969); *People v Schluter*, 204 Mich App 60, 66; 514 NW2d 489 (1994); see also US Const, Ams V and XIV; Const 1963, art 1, § 17.

15

We hold that MCR 6.310(C) provides the proper remedy for violations of MCR 6.302(B)(2). It requires that a defendant be informed of the maximum enhanced sentence before being given the opportunity to elect (1) to allow his plea and sentence to stand or (2) to withdraw it. Resentencing a defendant to a term within the range the court articulated at an erroneous plea hearing might lead to unfair results. It might create a binding "pleaded to" sentence to which neither the prosecution nor the defendant agreed.

Moreover, resentencing would modify an otherwise valid sentence. As we have said throughout this opinion, the *plea procedure* was defective here because defendant was not notified of his maximum possible sentence under MCR 6.302(B)(2). On the other hand, the *sentence* fell within the guidelines for a second-offense habitual offender and is presumed accurate "absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence."[52]

Thus, the remedy employed today differs from that used in *Ruffin* and *Lofton*. *Ruffin* is particularly distinguishable from the present action because there the

---

[52] MCL 769.34(10). See *People v Francisco*, 474 Mich 82, 88, 92; 711 NW2d 44 (2006) (remanding for resentencing under MCL 769.34(10) because of an incorrect scoring of the statutory sentencing guidelines). Defendant erroneously relies on *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993), to argue that he should be resentenced at the unenhanced maximum sentence for second-degree home invasion. Where an error in the judgment of sentence rendered the sentence inconsistent with the sentence the court intended, we have ordered that the judgment of sentence be amended. *People v Littleton*, 490 Mich 910; 805 NW2d 203 (2011). Similarly, when a *Cobbs* evaluation was within the sentencing guidelines range but the range was inaccurate because of a scoring error, we have ordered resentencing. In those cases, we have given the sentencing court the discretion either to adhere to the *Cobbs* evaluation or allow the defendant to withdraw the plea. See *People v Spencer*, 477 Mich 1086; 729 NW2d 225 (2007). These *Cobbs* cases are not applicable to the case at hand because there are no sentencing errors or errors in the judgment of sentence.

prosecution conceded that the proper remedy was to resentence the defendant to the erroneous sentence discussed at the plea hearing.[53] Less than a month later we employed the same remedy in *Lofton*, in which there was no indication that the prosecution conceded to the remedy.[54] To the extent that the orders in *Ruffin* and *Lofton* are inconsistent with this opinion, they are overruled.

In *Kade*, we noted that an arguable conflict exists between MCR 6.302(B)(2) and MCL 769.13(3). The statute permits a prosecuting attorney to file a notice of intent to seek an enhanced sentence under the habitual-offender statute after a defendant has entered a plea.[55] This Court did not amend MCR 6.302(B)(2) to resolve the tension between the court rule and the statute. But the remedy provided by MCR 6.310(C) will apply when a defendant is not notified of the enhancement until after pleading guilty. MCR 6.302 requires a voluntary and understanding plea. Hence, the concerns about a defendant understanding the consequences of a guilty plea are present when the defendant is notified of possible sentence enhancement only after pleading guilty. Just as in the case at hand, a defendant's right to make an understanding plea is of the utmost importance in that circumstance.

## CONCLUSION

MCR 6.302(B) specifically gives defendants who plead guilty of a crime the right to know beforehand the maximum possible sentence that will result from their plea. We

---

[53] *Ruffin*, 488 Mich at 891.

[54] *Lofton*, 488 Mich at 924.

[55] *Kade*, 486 Mich at 981-982 (MARILYN KELLY, C.J., concurring).

hold that when a defendant is subject to an enhanced sentence as an habitual offender, that enhanced sentence is part of the maximum prison sentence described in MCR 6.302(B)(2). Accordingly, we overrule the Court of Appeals' decision in *Boatman*. To hold otherwise would allow a defendant to plead guilty without knowing the true consequences of his or her plea. It would also prevent the defendant from making an understanding plea.

We also hold that MCR 6.310(C) provides the remedy for this violation of MCR 6.302(B)(2). Because the defendant in this case was not given the required sentence-enhancement notice, we remand the case to the trial court. Pursuant to MCR 6.310(C), defendant may allow his plea and sentence to stand or withdraw his plea, in which case the trial court must vacate his conviction and sentence. In the latter event, the matter may proceed to trial. We do not retain jurisdiction.

> Marilyn Kelly
> Michael F. Cavanagh
> Stephen J. Markman
> Diane M. Hathaway
> Mary Beth Kelly

# STATE OF MICHIGAN

## SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                     No. 143733

SHAWN THOMAS BROWN,

      Defendant-Appellant.

_____

YOUNG, C.J. (*concurring in part and dissenting in part*).

      For the reasons I have previously stated in *People v Boatman*,[1] I dissent in part from the majority opinion. Despite the majority's claimed "intent" regarding MCR 6.302(B), the court rule actually and explicitly requires only that the court inform a defendant of the maximum possible prison sentence *for the offense* to which the defendant pleads guilty and does not require the court to inform a defendant of the possible sentencing enhancement resulting from his status as an habitual offender. The "true" maximum possible prison sentence for the offense of second-degree home invasion is as described in MCL 750.110a(6)—"[h]ome invasion in the second degree is a felony punishable by imprisonment for not more than 15 years or a fine of not more than $3,000.00, or both." Defendant was accurately informed of the sentence for the offense to which he pleaded guilty, and in my view, the sentence meted out was valid in all respects.

---

[1] *People v Boatman*, 475 Mich 862, 862-863 (2006) (YOUNG, J., dissenting).

While I disagree that there was a violation of MCR 6.302(B)(2), I do agree with the majority on the remedy when such a violation occurs. I concur, therefore, with that portion of the majority opinion holding that the MCR 6.310(C) provides the *sole* remedy for violations of MCR 6.302(B)(2) when a defendant seeks to withdraw his plea after sentencing. This Court's orders in *People v Ruffin*[2] and *People v Lofton*[3] erroneously permitted the option of specific performance of the unenhanced maximum sentence in contravention of the plain language of the court rule and should not be viewed as having amended the court rule *sub silentio*. Thus, "[i]f the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside," the court is required to "give the advice or make the inquiries necessary to rectify the error," but the defendant's options are *limited to* "elect[ing] to allow the plea and sentence to stand or to withdraw[ing] the plea."[4]

Aside from the fact that the court rule does not provide for it, several considerations militate against permitting a defendant to be resentenced to the unenhanced maximum sentence.

First, if there is a consequential defect in the plea taking proceedings, the validity of the plea itself is called into question. MCR 6.302(A) indicates that a trial court may not accept a guilty plea unless it is "convinced that the plea is understanding, voluntary, and accurate." Moreover, the United States Supreme Court has stated that "a plea of

---

[2] *People v Ruffin*, 488 Mich 891 (2010).

[3] *People v Lofton*, 488 Mich 924 (2010).

[4] MCR 6.310(C).

2

guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'"[5] If a defendant's guilty plea was not an understanding plea, permitting a defendant his preferred remedy of being resentenced to an unenhanced sentence does nothing to cure the invalidity of the underlying guilty plea.

Second, permitting a defendant to be resentenced assumes that the information concerning the unenhanced sentence given by the trial court was a term of the plea bargain agreement, rather than simply incomplete information. In this case, defendant was charged with second-degree home invasion,[6] larceny of a firearm,[7] being a felon in possession of a firearm,[8] and larceny in a building[9] as a fourth-offense habitual offender.[10] Defendant pleaded guilty to second-degree home invasion as a second-offense habitual offender[11] in exchange for the dismissal of the remaining charges and an agreement by the prosecutor not to charge defendant with possession of a firearm during the commission of a felony.[12] At the plea proceeding, defendant indicated that these

---

[5] *Bousley v United States*, 523 US 614, 618; 118 S Ct 1604; 140 L Ed 2d 828 (1998) (citation omitted).

[6] MCL 750.110a(3).

[7] MCL 750.357b.

[8] MCL 750.224f.

[9] MCL 750.360.

[10] MCL 769.12.

[11] MCL 769.10.

[12] MCL 750.227b.

terms were his *complete* understanding of the plea bargain agreement. Only later was defendant informed that the maximum possible prison sentence for second-degree home invasion was 15 years. Thus, at the time the plea was entered, neither the parties nor the trial court believed that defendant was tendering his guilty plea in exchange for the trial court's preliminary agreement to relinquish its discretion to enhance defendant's sentence as a habitual offender. While I do not believe that the advice given was erroneous, deeming it to be a term of the plea agreement *after the fact* (in essence, a de facto *Cobbs*[13] agreement) substantially alters the negotiated plea agreement in contravention of the intent of all concerned at the time the plea was originally tendered.

Moreover, even when there is a *genuine Cobbs* agreement and a defendant's guilty plea is made in exchange for a specific sentence disposition by the trial court, the defendant's remedy is limited to withdrawing his guilty plea if the court is unable to sentence the defendant as stated. Under MCR 6.310(B)(2)(b), a defendant is *not* entitled to specific performance of a *Cobbs* agreement. Thus, permitting the remedy of specific performance when a defendant who is an habitual offender is allegedly incorrectly advised regarding the unenhanced maximum sentence provides that defendant *with a greater remedy* than he would have been entitled to if the unenhanced maximum sentence had been an *explicit* term of the plea agreement. Defendant's counsel has proffered no reason to support such an enhanced benefit, and I certainly cannot divine a justification for why defendant should be entitled to receive it.

---

[13] See *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

4

Finally, assuming that the allegedly incomplete information was a term of the plea agreement, permitting defendant the remedy of being resentenced to the unenhanced maximum sentence would essentially permit the trial court to change its mind regarding the exercise of the court's sentencing discretion, disregard all the negative information that convinced the court to enhance the defendant's sentence in the first place,[14] and allow the modification of a valid sentence. MCR 6.429(A) states that a court may correct an invalid sentence, but may not modify a valid sentence after it has been imposed. I agree with the majority that defendant's sentence of 75 to 270 months for second-offense degree home invasion, as enhanced by his second-offense habitual offender status, is perfectly valid. The infirmity lies, if anywhere, with the plea colloquy.

---

[14] At sentencing, the trial court stated:

> I read the Presentence Report. . . I read the Victim Impact Statement. I listened to counsel and [defendant] in court.
>
> You're 31 years of age, six felonies, five prior misdemeanors. This case involves entering into, obviously without permission, the home of another person to steal guns, coins, cash.
>
> I think [the probation officer] wrote a fairly clear report. And his description of your interactions and your background, there's a striking contrast between what he describes and how you present yourself in Court, how you've presented yourself in Court before. He describes you as violent, unpredictable, less than convincing, a manipulator, does not like being confronted about his lack of motivation. *This report does indicate very little of a positive nature for this Court to rely on.*
>
> *You ask for a fair and lenient sentence . . . in this case. Those things are inconsistent because a lenient sentence would not be fair, it would not be just.*

Because I believe that MCR 6.302(B) does not require the trial court to inform a defendant of his maximum possible prison sentence as enhanced by his status as a habitual offender, I respectfully dissent. I concur, however, that MCR 6.310(C) provides the sole remedy for violations of MCR 6.302(B)(2) when a defendant seeks to withdraw his plea after sentencing.

Robert P. Young, Jr.
Brian K. Zahra

6