# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ANTHONY NORMAN CARTA,

      Defendant-Appellant.

UNPUBLISHED
April 11, 2017

No. 330693
Oakland Circuit Court
LC No. 2014-251178-FH

Before: O'CONNELL, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Defendant pleaded guilty plea to (1) conducting a criminal enterprise, MCL 750.159i(1), (2) false pretenses with intent to defraud, $20,000 or more but less than $50,000, MCL 750.218(5)(a), and (3)-(7) five counts of false pretenses with intent to defraud, $1,000 or more but less than $20,000, MCL 750.218(4)(a). The court sentenced defendant as a fourth habitual offender to 30 to 99 years' imprisonment for each count and ordered defendant to pay $400,000 in restitution. The trial court later allowed defendant to withdraw his pleas as to Counts 3 through 7, finding that defendant was not properly advised of the sentencing consequences. Defendant sought leave to appeal to challenge whether he should have been permitted to withdraw his guilty plea as to the other two charges, contending that he was denied his right to counsel and that the defective sentencing notification affected his entire plea. We agree that the court's erroneous advice rendered the entire plea proceeding defective. Accordingly, we reverse and remand for further proceedings at which defendant may withdraw the entirety of his guilty plea.

## I. BACKGROUND

From November 2009 through July 2013, defendant operated Freedom by Faith Ministries, L.L.C., a "Ponzi scheme," advertised via "unsuspecting Detroit-area Christian channels, networks and ministries." Using this entity, defendant defrauded approximately 100 victims out of more than $700,000 by falsely promising services to avoid home foreclosure. As a result of this scheme, the prosecution charged defendant with seven criminal counts: (1) conducting a criminal enterprise, (2) false pretenses, $20,000 or more but less than $50,000, and

-1-

(3)-(7) false pretenses, $1,000 or more but less than $20,000.[1]  And this was not defendant's first encounter with the criminal justice system.  The prosecution notified defendant that if convicted his sentences would be enhanced as a fourth habitual offender.  Defendant's prior charges, arising in the early 1990s and 2012, all involved the conversion or embezzlement of the funds of others.

At a pretrial hearing on September 24, 2014, defendant's retained attorney, Jeffrey Randa, informed the court that his sole role was to attempt to negotiate a plea agreement, but that he had found two substitute trial attorneys for his client if needed.  The prosecutor and Randa were in "preliminary negotiations" that included a reduction of defendant's habitual offender enhancement.  Randa sought sentencing in the bottom third of defendant's calculated guidelines range in exchange for full payment of the restitution order.  The prosecutor expressed hesitation, noting the numerous additional charges the state could bring against defendant.

On October 30, 2014, the prosecutor advised that he intended to call all 100 victims of defendant's financial scheme as witnesses, requiring at least four weeks for trial.  The prosecutor requested that the trial be "set . . . out far enough" so defendant's substitute trial counsel could prepare and avoid adjournment.  The court scheduled trial for March 9, 2015.

Defendant appeared at the January 29, 2015 pretrial conference without counsel.  The court inquired of defendant's intent and a confused colloguy occurred.  Defendant requested appointed counsel but then equivocated, noting "I dropped off an evidence box to a Mark Hart (sp) and he actually is reviewing the case to go to trial."  Defendant asserted that he had "[n]ot yet" retained Hart, but "I dropped off the evidence to him about a week ago . . . and he's been reviewing it for trial purposes.  Because we are intending to . . . move forward with the trial."

The court recessed for two hours to allow attorney Randa to appear.  During the recess, Randa and the prosecutor convened to negotiate a plea agreement.  Randa requested that a hearing be scheduled for early February as he believed the plea could be resolved by then.  The court inquired whether defendant would be retaining substitute counsel.  Randa responded that no substitution had been made as yet, but that defendant and Randa had spoken to attorney Steve Kaplan about taking over the case.

Within the week, Randa filed a motion to withdraw as counsel of record.  Randa indicated that he was hired strictly to negotiate a plea agreement and was unable to manage the trial.  Since the January 29 pretrial, defendant had restated his intention to take the matter to trial, rather than enter a plea.  Despite numerous promises that he would retain new counsel, defendant had not followed through and Randa requested release from his duties.  A hearing was scheduled for February 12, 2015.  Randa served the notice of hearing as well as his motion upon defendant.  Despite that the hearing was noticed for February 12 and defendant had been advised of that hearing date, the hearing was conducted on February 11.  Defendant did not appear and there is no record indication that he was ever notified of the new hearing date.  At the hearing, Randa asserted that defendant had promised over the weekend that he was hiring another attorney.

---

[1] The prosecutor charged Freedom by Faith in a separate information.

Defendant had not made good on his promise, however, and Randa expressed his need "to get out of this case."

The court granted Randa's motion to withdraw. The court emphasized that the trial would not be adjourned and directed Randa to include language to that effect in the order. That day, the court signed a form "pretrial order" advising of the next pretrial conference and listing March 9 as the trial date. At the bottom of the order, the court included, "The case will proceed to trial on 3/9/15 whether or not the defendant has retained new counsel." The "order permitting withdrawal of counsel" prepared by Randa, however, did not include this language. The record contains no proof of service for either order to establish its provision to defendant.

Defendant appeared at the February 26 pretrial conference without counsel. He insisted that he requested appointed counsel at the January hearing. Defendant reiterated his request for appointed counsel and claimed "I believe I am eligible." Defendant then waivered, asserting that he intended to retain Hart who was already "going through the evidence box." The court warned, "[Y]ou need to have Mr. Hart file an appearance and . . . we'll see him for trial on March 9th."

Despite defendant's stated intent to retain Hart, defendant appeared on March 9 without an attorney. Defendant explained that he attempted to pay Hart a partial retainer of $12,500, but that week Hart had demanded his full $50,000 retainer up front. Defendant claimed that his relatives planned to meet with Hart later that week to pay this amount. Defendant further expressed confusion regarding the plea agreement and asked if he could speak to "a public defender." The court informed defendant, "[W]e only appoint attorneys for people who can't afford attorneys. It's my understanding that you can afford an attorney."

The prosecutor requested to move forward with trial, noting that the numerous prosecution witnesses were assembled and ready. "However," the prosecutor continued, "we are more than willing to take a plea today if [defendant] wants to go along with what" had been agreed upon by counsel. The prosecutor reiterated the terms that had been discussed: should defendant make full restitution of $400,000 by sentencing, the court would sentence him in the bottom third of the minimum guidelines range.

Ultimately, defendant acknowledged that the court had warned him that the trial would not be adjourned but requested this relief in any event so he could officially retain Hart. The court was concerned that an appellate court might overturn its decision but ordered that the trial proceed with defendant representing himself. Before finalizing this ruling, the court spent significant time developing a record regarding defendant's assets, income, and liabilities to determine his financial ability to retain counsel. The court found that defendant "has more than sufficient financial capacity to have paid for the lawyer and to have the lawyer retained well before today's date." The court deemed that defendant had engaged in "delaying tactic[s] for several months" and that his lack of counsel was a "self-inflicted wound[]."

Defendant then decided to plead guilty. As to the counts against him (rather than against Freedom by Faith), the prosecutor described:

[Defendant] would plead guilty as charged to the remaining counts, except for the fact that . . . his personal restitution would be $400,000. . . .

And we would agree not to charge [defendant] or Freedom by Faith once that plea is entered and that agreement is made for any of the other victims. And I mentioned this before at our original pretrial that we had other arrows in our quiver that we could employ later on.

If he does that, it would be up to the court's discretion as to whether it would be bound by its prior [*Cobbs*][2] agreement. . . .

The court reconfirmed the sentencing arrangement: that if defendant paid the full amount of restitution by sentencing, the court promised defendant's sentence would be "nothing worse than the bottom one-third of the guideline range for purposes of incarceration." If, on the other hand, defendant did not make restitution in a timely fashion, the court warned, "I could sentence [defendant] any way I want." Defendant expressed his understanding of this agreement and noted that a relative had agreed to loan him $400,000 to make restitution.

Defendant proceeded to plead guilty to all seven counts levied against him. The court questioned defendant regarding his age, education, and level of understanding of the rights he was ceding by pleading guilty. In relation to defendant's right to counsel, the court described that defendant had "forfeited" it. The court posed several questions to establish a factual predicate for defendant's plea. The court advised defendant that by pleading guilty to Count 1, he "could receive up to 20 years incarceration;" by pleading guilty to Count 2, he "could receive up to 15 years of incarceration;" and in relation to Counts 3 through 7, he "could receive up to five years of incarceration." The court informed defendant that as a fourth habitual offender, his maximum sentences could be enhanced up to life imprisonment on Counts 1 and 2, and up to 15 years on the remaining counts. The court and the prosecutor answered several questions posed by defendant, repeatedly asking whether he understood their responses.

The court sentenced defendant on April 2, 2015, but defendant had not made restitution for his offenses. At the outset of the hearing, defendant, who appeared without an attorney, stated that he wanted to withdraw his plea because he entered it "without representation" and "did not understand" the terms. The court reminded defendant that the sentencing agreement required defendant to make restitution before the sentencing hearing and as he had not done so, his sentence would not be limited to the bottom third of the sentencing guidelines. The court departed upwards 40 months and sentenced defendant to 30 to 99 years' imprisonment for each of the seven counts. Although this sentence comported with the court's advice at the plea proceeding that defendant could face a maximum sentence of life imprisonment on Counts 1 and 2, the sentence clearly exceeded the court's advice pertaining to Counts 3 to 7 that the maximum possible sentence was 15 years.

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

After sentencing, defendant requested and received appointed appellate counsel.  He sought to withdraw his guilty plea because (1) he was impermissibly deprived of his right to counsel during the plea proceeding, and (2) the trial court failed to correctly inform him that he faced a maximum sentence of life imprisonment on Counts 3 to 7 due to his status as a fourth habitual offender.  At the motion hearing, defendant contended that his plea was "a package deal" and he should be permitted to withdraw his plea in its entirety.  The court agreed that its advice regarding Counts 3 through 7 was inadequate and permitted defendant to withdraw his plea as to those counts only.  The court advised that defendant could opt to maintain his plea or go to trial on those counts or the prosecution could choose to dismiss those charges.  Defendant withdrew his plea to Counts 3 through 7.  Although the court was "skeptical" about defendant's claim to poverty, the court ordered that trial counsel would be appointed at that time.

## II. ANALYSIS

Defendant contends that he should have been permitted to withdraw his plea as to all counts based on the deprivation of counsel and the court's faulty sentencing notifications.  We review "for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Brown*, 492 Mich 684 688; 822 NW2d 208 (2012).  "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes."  *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011).  "A defendant seeking to withdraw his or her plea after sentencing must demonstrate a defect in the plea-taking process." *Brown*, 492 Mich at 693; MCR 6.310(C).  We review de novo underlying questions of law and review the trial court's factual findings for clear error.  *People v Martinez*, 307 Mich App 641, 646-647; 861 NW2d 905 (2014).

To be valid, a plea must be "understanding, voluntary, and accurate." *Brown*, 492 Mich at 688-689, citing MCR 6.302.  "In order for a plea to be voluntary and understanding, the defendant 'must be fully aware of the direct consequences of a conviction[.]' " *People v Blanton*, ___ Mich App ___; ___ NW2d ___ (Docket No. 328690, issued August 30, 2016), slip op at 6, quoting *People v Cole*, 491 Mich 324, 333; 817 NW2d 497 (2012).  "The penalty to be imposed is '[t]he most obvious direct consequence of a conviction[.]' " *Blanton*, slip op at 6, quoting *Cole*, 491 Mich at 334 (quotation marks omitted).  To this end, MCR 6.302(B)(2) requires the court to advise a defendant before plea entry of "the maximum possible sentence for the offense and any mandatory minimum sentence required by law."  See *Brown*, 492 Mich at 689.  This includes notification of an enhanced maximum based on habitual offender status. *Id.* at 694.

The trial court admitted its error in this regard.  The court informed defendant that his maximum possible enhanced sentences for Counts 3 to 7 was 15 years.  In actuality, defendant's maximum sentences for these offenses could have been enhanced to life imprisonment.  See MCL 769.12(1)(b); MCL 750.218(40(a).  The erroneous advice rendered the plea proceeding defective.  See *Brown*, 492 Mich at 694; *Blanton*, slip op at 6-7.

The question before this Court is the proper remedy for the court's error.  MCR 6.310(C) demands that in the face of a defendant's motion to withdraw a defective plea, "the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea."  "If the

plea is withdrawn, the trial court must vacate [the defendant's] conviction and sentence and the matter may proceed to trial." *Brown*, 492 Mich at 699.

This Court recently addressed the precise issue before this Court: whether inadequate advice regarding a portion of the offense sentences merits withdrawal of a defendant's entire plea. In *Blanton*, slip op at 1, the defendant pleaded guilty to armed robbery, assault with intent to do great bodily harm, and possession of a firearm during the commission of a felony (felony-firearm). The trial court failed to advise the defendant of the two-year mandatory sentence for his felony-firearm conviction or that this sentence must be served before his sentences for the other offenses. *Id.*, slip op at 2.

After sentencing, the defendant moved to withdraw his guilty plea as to all charges, arguing "that his plea was not knowingly, understandingly, and voluntarily entered because the trial court, during the plea proceeding, failed to advise him of the maximum possible penalty he faced upon conviction of the felony-firearm charge, or that such sentence would run consecutive to the other sentences." *Blanton*, slip op at 3. The defendant insisted that a plea agreement is a " 'comprehensive deal' which was not divisible:" "You can't just take one part out because it's a negotiated process." *Id.* Just as here, the prosecutor in *Blanton* argued that the defendant was only entitled to withdraw a portion of his plea. The trial court allowed the defendant to withdraw his entire plea, relying on caselaw from the state of Washington. *Id.*

This Court found the defendant's plea defective based on the trial court's failure to notify the defendant of the sentencing consequences of his felony-firearm conviction. *Id.*, slip op at 7. In determining the proper remedy, this Court found persuasive the "contractual approach" adopted by the Washington Supreme Court in *State v Turley*, 149 Wash 2d 395; 69 P3d 338 (2003). *Blanton*, slip op at 8. In *Turley*, 149 Wash 2d at 398, "the defendant pleaded guilty to two charges, but was erroneously advised at the plea hearing regarding the mandatory sentencing requirements of one of the charges." *Blanton*, slip op at 8. This Court explained that, in *Turley*, the Washington Supreme Court observed that a " 'plea agreement is essentially a contract between a defendant and the State.' " *Id.* at 8, quoting *Turley*, 149 Wash 2d at 400. As such, the *Turley* court "looked to contract principles—specifically 'the intent of the parties—to determine whether a plea agreement should be considered separable or indivisible." *Blanton*, slip op at 8, quoting *Turley*, 149 Wash 2d at 400.

The contractual approach requires the court to look for "objective indications of intent." *Blanton*, slip op at 8, citing *Turley*, 149 Wash 2d at 400. In *Turley*, those objective indications included:

> First, the defendant "negotiated and pleaded to two charges contemporaneously"; second, "[o]ne document contained the plea to and conditions for both charges"; and finally, "[t]he trial court accepted his plea to both charges at one hearing" without separately advising the defendant of the consequences of each individual charge. Finding no "objective evidence of a contrary intent" in the agreement itself, the Court ultimately concluded that the plea agreement was indivisible and that the defendant "should have been permitted to withdraw both pleas" as a result of the erroneous information given at the plea hearing pertaining to only one of the charges. [*Blanton*, slip op at 8, quoting *Turley*, 149 Wash 2d at 400-401.]

*Blanton* noted that since *Turley*, Washington courts have treated plea agreements covering multiple charges as a "package deal" as long there are "objective circumstances espous[ing]" this intent. *Blanton*, slip op at 8.

Ultimately, this Court accepted *Turley*'s principles:

> We conclude that the contractual approach set forth in *Turley* is persuasive. This Court has previously explained that "[c]ontractual analogies may be applied in the context of a plea agreement" if to do so would not "subvert the ends of justice." *People v Swirles (After Remand)*, 218 Mich App 133, 135; 553 NW2d 357 (1996) (citations omitted). See also [*Martinez*, 307 Mich App at 651]. Given the nature of the plea-bargaining process in Michigan where both parties often tend to negotiate a "package deal," we conclude that adherence to the approach set forth in *Turley* would not "subvert the ends of justice." *Swirles*, 218 Mich App at 651. [*Id*., slip op at 9.]

This Court then applied the "contractual approach" to the facts of defendant Blanton's case:

> [T]he objective facts reveal an intent by the prosecution and defendant to treat the plea agreement as indivisible. *Turley*, 149 Wash 2d at 400. Specifically, defendant was charged with multiple offenses in a single Information; he negotiated with the prosecution to allow him to plead guilty to three charges contemporaneously in exchange for the dismissal of the remaining charges and the habitual offender enhancement; a single document contained the terms of the plea agreement; and the trial court accepted defendant's pleas to all three charges at one hearing. Specifically, at the sentencing hearing, the trial court did not ask defendant his plea to each individual charge; instead, the trial court asked defendant how he pled to the charges and defendant's singular response was "guilty." In other words, the "pleas to multiple counts or charges were made at the same time, described in one document, and accepted in a single proceeding," and were thus part of a "package deal." *Id*. Consequently, defendant asserted a plea of guilty to the entirety of the plea agreement. Neither the trial court nor the State sought from defendant a bifurcation of any of the factual underpinnings for any of the crimes to which he tendered a plea of guilty. As such, the trial court did not abuse its discretion in allowing defendant to withdraw his plea in its entirety rather than only partially because the plea agreement is indivisible. [*Id*., slip op at 9-10.]

Applying the contractual approach in the instant case, we likewise conclude that the parties intended to treat the plea agreement as a "package deal." Defendant was charged with multiple offenses in a single criminal information. It is objectively apparent from the record that defendant and the prosecutor negotiated an agreement that encompassed all the charges as one package: defendant agreed to plead guilty to all seven charges and make restitution by sentencing in exchange for the prosecution's promise not to bring additional charges and court's promise to sentence him in the bottom third of the guidelines. The bulk exchange of terms, rather than piecemeal negotiation, evidences the parties' intent to treat the plea as a single transaction.

Further, like in *Blanton*, defendant pleaded guilty and the court accepted his plea to all of the charges contemporaneously at the same proceeding. The court did not separately ask for or accept defendant's plea to each individual charge. Instead, after reminding defendant of the charges to which he was pleading and the maximum possible sentences for the offenses (as was done in *Blanton*, slip op at 2), the parties and court confirmed the terms of the plea agreement as a single deal. Defendant stated that he wanted to "go ahead with this plea," singular. After eliciting a single factual basis for the offenses as a whole, the court accepted defendant's plea as "understandingly, voluntarily and accurately made." Accordingly, like the defendant in *Blanton*, the current defendant "pled guilty to the entirety of the plea agreement" at a single proceeding. *Blanton*, slip op at 2, 9.

The objective facts in this case reveal the parties' intent to treat defendant's plea as a "package deal," which was indivisible. As such, defendant was entitled to withdraw his plea in its entirety. The trial court abused its discretion in denying defendant's request to do so. In accordance with MCR 6.310(C), on remand, defendant must be given "the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea." Given this resolution, we need not address defendant's claim based on the deprivation of counsel. However, the trial court is directed to either maintain defendant's appointed counsel or allow defendant a reasonable opportunity to retain counsel of his choosing.

We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra