# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSHUA LEVI ALGER,

        Defendant-Appellant.

UNPUBLISHED
June 16, 2016

No. 322473
Muskegon Circuit Court
LC No. 12-061794-FH

Before: STEPHENS, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Defendant pleaded nolo contendere to charges of assault with intent to do great bodily harm less than murder, MCL 750.84, and aggravated domestic assault, second offense, MCL 750.81a(3). His plea hinged on his understanding that he was a third habitual offender and would be sentenced as such. The trial court determined at sentencing that defendant was a fourth habitual offender based on a Colorado conviction, the status of which defendant vociferously protested. Despite that defendant had previously expressed that he would not plead guilty if treated as a fourth habitual offender, the court refused to allow defendant to withdraw his plea and imposed an enhanced sentence.

Sentencing defendant as a fourth habitual offender was in direct conflict with defendant's understanding of his plea, rendering it invalid. Accordingly, we vacate defendant's plea-based convictions and remand for continuation of the trial proceedings.

## I. BACKGROUND

Defendant was charged with assaulting his wife on March 1, 2012. In the original information, the prosecution notified defendant that the state intended to seek enhancement of his ultimate sentence as a habitual offender, third offense. The prosecution determined that defendant was a third habitual offender based on two 2001 convictions for controlled substance crimes. On April 6, 2012, the prosecution entered an amended information, notifying defendant that it would proceed against defendant as a fourth habitual offender. In addition to the controlled substance based convictions, the prosecution recited that "on or about 2012, [defendant] was convicted of the offense of sexual assault in the El Paso County Court, State of Colorado."

-1-

The current matter languished in the trial court because defendant had been charged with an offense committed in 2008 and everyone, including defendant, desired to conclude that proceeding first. After the district court bound defendant over for trial on the assault charges levied against him, defendant decided to enter a nolo contendere plea. At a May 22, 2013 hearing, the prosecution asserted that it had entered no plea agreement with defendant and noted, "It's my understanding . . . that the defendant is contesting the habitual fourth offense notice so we will need to establish that at sentencing."

The court questioned defendant on the record to establish whether his plea was knowing and voluntary. Defendant affirmed that no one promised him anything in exchange for his plea, no one forced him to plead, and the plea was his "own choice." Defendant added, "I need to go," referring to his desire to leave the Muskegon County Jail.

The prosecution then read the charges levied against defendant, recited the basic facts supporting those charges, and described the potential sentences accompanying each offense. In relation to the habitual offender fourth offense notice, the prosecution enumerated that defendant was convicted of two counts of delivering or manufacturing marijuana and an unidentified controlled substance on August 17, 2001, and of sexual assault in Colorado in 2012.

The court asked defendant if he understood the charges against him. Defendant expressed some confusion regarding the intent elements for his current assault charges. Defendant admitted that he was convicted of two controlled substance offenses in 2001. In relation to the 2012 Colorado matter and the level of the habitual offender notice, the court and defendant iterated:

> *Q.* OK. So, at least you're a third felony offender but whether you're a fourth or not -
>
> *A.* Yes, sir.
>
> *Q.* – you're contesting.
>
> *A.* Yes, sir.
>
> *Q.* All right. We'll reserve that for the, ah, sentencing. Now, you realize that in the event that you are a fourth felony offender the maximum penalty for assault [with] intent to do great bodily harm would be up to life in prison and a $5000 fine? You understand?
>
> *A.* I wouldn't be pleading guilty if that was the case, sir.
>
> *Q.* OK.
>
> *A.* I'm very aware that I'm not a fourth habitual offender.
>
> *Q.* OK. But you do understand that –
>
> *A.* Yes, sir, I do.

*Q.* – if it was fourth felony? All right. And you understand that . . . if you're a third felony offender, which is what you're contending –

*A.* Double (undistinguishable).

*Q.* – that the maximum penalty would be up to 20 years in prison and a $5000 fine.

*A.* Yes, your honor.

*Q.* All right. And you understand that maximum penalty for, um, felony, ah, domestic violence second offense would be, if you're a third offender, up to four years in prison and [a] $2500 fine and if you're a fourth offender up to 15 years in prison and a $2500 fine?

*A.* Yes, sir.

After informing defendant of the rights he would cede by pleading and questioning whether defendant read and understood the advice of rights form he was presented, the court accepted defendant's plea of nolo contendere to the two assault charges. At the close of the hearing, the court stated on the record:

I've made no agreement with regard to plea or sentence. [Defendant's] offered me pleas of nolo contendere to assault with intent to do great bodily harm and DV aggravated. He's acknowledged being a third habitual offender. The prosecutor alleges fourth but that remains to be proven. The plea is understanding, voluntary and accurate. I accept the plea. Refer for a pre. Remand for the sheriff for sentencing[.]

Defendant balked at the idea of waiting for a presentence investigation report to be prepared. "This is the reason why I'm making the plea so that I can leave this place," he begged, "But nobody wants [this case to be over] more than I do I promise you that."

A sentencing hearing was conducted on June 10, 2013. Defense counsel immediately notified the court that defendant desired to withdraw his plea. Counsel indicated that defendant "says he doesn't have any Colorado conviction and [therefore] that he has no assaultive convictions." Defendant challenged the scoring of any prior record variable using that information as well as the habitual offender fourth offense sentencing enhancement.

In relation to the Colorado offense, defendant explained:

*The Court.* Yes. Now what are the invalid ones? For example, let's start with number 11, OK? That's the Colorado. That it's alleged that he failed to appear for sentence. You say that's all bogus. That's not him, right?

*[Defense Counsel].* He'll have to explain that for you, your honor. . . .

\* \* \*

*[Defendant]*. . . . In Colorado you can't have a conviction until you can prove the date of sentencing so I believe that, um, I have the paperwork coming to me for, for this sentencing but, ah, I haven't been sentenced yet. In Colorado I think that if the law there wouldn't consider it a conviction that the law here shouldn't –

*The Court*. Oh.

*[Defendant]*. – be able to consider [it a] conviction either.

*The Court*. OK. Well, I, in Michigan I do. Once the jury says you're guilty I consider it a conviction but the sentence is pending. OK. Now, you also have, um, are you denying that you have a pending R and O charge in Colorado? That's number 12.

*[Defendant]*. No, that's a misdemeanor charge.

*The Court*. OK. What about the –

*[Defendant]*. They're all pending. Even, even the one that they're considering –

*The Court*. OK.

*[Defendant]*. – guilty is pending because I am supposed to have, um, a state hospital psych evaluation done. It's not –

*The Court*. Wait a minute. Which one, which one are you talking about?

*[Defendant]*. Everything that has anything to do with Colorado is all pending because of that.

*The Court*. OK. But was there a jury conviction on the charge of sexual assault on –

*[Defendant]*. No, there wasn't.

*The Court*. Oh.

*[Defendant]*. They, they've convened and they came back guilty but the judge held it off until the evaluation was done. I represented myself in that trial and, ah, they, and –

*The Court*. OK.

*[Defendant]*. – whatever reason –

*The Court*. Well, I find that, I find based on what you said that's at least accurate but these are all pending. . . .

-4-

After discussion of other prior charges recited in the PSIR, defense counsel again advised the court that defendant had expressed a desire to withdraw his plea and that counsel was uncertain of the basis for this request. The court inquired of defendant, "Do you . . . wanna proceed with sentencing? I mean, you're the one that wanted to have this sentence moved up so I moved it up." Defendant responded in the affirmative but clarified, "not if it's a fourth habitual."

The prosecutor then indicated that he had contacted officials in Colorado to clarify the status of defendant's 2012 assault conviction but had yet to receive a response. He acknowledged that without the Colorado conviction, defendant would be sentenced as a third habitual offender. The court asserted that it could not sentence defendant until it was certain of defendant's habitual offender status and recessed to allow the prosecution to investigate further.

The court reconvened four hours later. The prosecution presented an order of conviction provided by the El Paso County deputy district attorney, indicating that defendant had been "found guilty" of the contested offense. The prosecution therefore believed defendant to be a fourth habitual offender under Michigan law.

Defense counsel retorted that based on the advice of defendant's appellate attorney in the Colorado matter, "even though there's a jury returned verdict that it's still not the basis for a conviction, it's not a conviction until sentencing according to case law." Counsel then presented to the court a February 21, 2014 letter from Colorado attorney E. Willard Cook, Jr. The letter acknowledged that the El Paso County district attorney advised the state of Michigan that defendant had been jury convicted of sexual assault on October 26, 2011. Cook continued, "It appears that some information contained in the order is incorrect, including but not limited to the date the jury returned the guilty verdict." Under Cook's "interpretation of the Colorado Rules of Criminal Procedure," a Colorado guilty verdict "is not a final conviction." Rather, pursuant to CRCP 32(b)(3), the verdict did not become "a judgment of conviction" until sentence was imposed.

Defendant was given an opportunity for allocution. He insisted, "I have no convictions in Colorado. I'm gonna stand by that[.]" Defendant concluded by describing his alleged mistreatment in the county jail and its effect on his decision to plead.

The court then sentenced defendant as a fourth habitual offender to nine to 25 years for the assault with intent to do great bodily harm charge and 465 days to two years on the domestic assault charge, with credit for 465 served.

On December 11, 2013, with the assistance of appellate counsel, defendant filed a motion in the circuit court to withdraw his plea. Defendant asserted that his plea "was made under the condition that he was pleading as a third habitual offender and not a fourth habitual offender. In fact, Defendant contested his habitual fourth enhancement." Defendant supported his challenge at the sentencing hearing. Despite that "[i]t was known throughout the proceedings that this Defendant was challenging the Colorado conviction and the enhancement as a fourth habitual offender," the court overruled his objections and sentenced defendant as a fourth habitual offender. This confusion rendered defendant's plea involuntary, defendant contended, supporting his bid to withdraw.

The prosecution challenged defendant's motion, noting that defendant was aware there was a chance his fourth habitual offender status would be established at sentencing and chose to plead anyway. The prosecution contended that defendant's "decision to plead had nothing to do with any *condition* that he was a third-time rather than fourth-time felon. Instead, Defendant was reserving the issue whether he was a third- or fourth-time felon for the sentencing proceeding." (Emphasis in original.) In a supplemental brief, the prosecution further noted that the Colorado defense attorney's opinion about the interpretation of a court rule was not law and defendant could not have reasonably relied upon it.

The court denied defendant's motion. Michigan law applied to determine whether a guilty verdict in another state amounted to a conviction to be counted under Michigan's habitual offender statute, the court asserted. And defendant's plea "was not entered on the condition that he be sentenced as a third felony offender" despite his challenges to his status. Rather, the court found that it had alerted defendant that he would be sentenced as a third or fourth habitual offender depending upon the evidence presented at the sentencing hearing. As such, the court deemed the plea knowing and voluntary.

## II. WITHDRAWAL OF PLEA

We review "for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Brown*, 492 Mich 684, 688; 822 NW2d 208 (2012). Our review is de novo with respect to underlying constitutional issues, as well as the interpretation and application of the court rules. *People v Cole*, 491 Mich 325, 329-330; 817 NW2d 497 (2012). In *Cole*, the Michigan Supreme Court addressed the due process requirements related to the entry of a nolo contendere plea and the associated waiver of various constitutional rights, observing:

> A no-contest or a guilty plea constitutes a waiver of several constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Boykin v Alabama*, 395 US 238, 243; 89 S Ct 1709; 23 L Ed 2d 274 (1969); *People v Jaworski*, 387 Mich 21, 28-29; 194 NW2d 868 (1972). For a plea to constitute an effective waiver of these rights, the Due Process Clause of the Fourteenth Amendment requires that the plea be voluntary and knowing. *McCarthy v United States*, 394 US 459, 466; 89 S Ct 1166; 22 L Ed 2d 418 (1969); see also *North Carolina v Alford*, 400 US 25, 31; 91 S Ct 160; 27 L Ed 2d 162 (1970) (noting that a plea must be "a voluntary and intelligent choice among the alternative courses of action open to the defendant"). In *Brady v United States*, 397 US 742, 748; 90 S Ct 1463; 25 L Ed 2d 747 (1970), the United States Supreme Court held that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." [*Cole*, 491 Mich at 332-333 (footnote omitted).]

In Michigan, the requirements surrounding circuit court acceptance of a nolo contendere plea are provided in MCL 6.302. MCR 6.302(A) provides:

> The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before

accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E).

MCR 6.302(B) through (E) enumerates in detail the inquiries the court must make and advice the court must give to ensure that a defendant's plea is understanding, voluntary, and accurate. Among the information that must be imparted by the court is "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law, including a requirement for mandatory lifetime electronic monitoring under MCL 750.520b or 750.520c." MCR 6.302(B)(2).

Here, although defendant informed his attorney that he wanted to withdraw his plea before the sentencing hearing began, he did not file his motion until after sentence was imposed. MCR 6.310(C) governs the withdrawal of pleas after sentencing in the circuit court as follows:

If the trial court determines that there was an error in the plea proceeding that would entitle the defendant to have the plea set aside, the court must give the advice or make the inquiries necessary to rectify the error and then give the defendant the opportunity to elect to allow the plea and sentence to stand or to withdraw the plea. If the defendant elects to allow the plea and sentence to stand, the additional advice given and inquiries made become part of the plea proceeding for the purposes of further proceedings, including appeals.

Pursuant to this rule, a defendant seeking to withdraw his or her plea after sentence has been imposed must demonstrate a defect in the plea-taking process. *Brown*, 492 Mich at 693.

Defendant established an error or defect in the plea proceedings and therefore the trial court abused its discretion in denying his motion to withdraw his plea. Specifically, for a plea to be voluntary, a defendant "must be 'fully aware of the direct consequences' of the plea." *Cole*, 491 Mich at 333, quoting *Brady*, 397 US at 755 (other citations omitted). A "direct" consequence of a defendant's plea is one that "represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Cole*, 491 Mich at 334 (quotation marks and citations omitted). The level of a habitual offender sentencing enhancement is a direct consequence of a plea as it automatically impacts a defendant's sentencing range. Defendant had to be "fully aware" of this condition *before* entering his plea in order for his plea to be voluntary. See *Brown*, 492 Mich at 693-694 ("We hold that, before pleading guilty, a defendant must be notified of the maximum possible prison sentence with habitual-offender enhancement because the enhanced maximum becomes the 'maximum possible prison sentence' for the principal offense.").

Defendant was not fully aware of his habitual offender status before entering his plea because the court had yet to resolve the factual dispute. Defendant took advice from Colorado counsel that the jury verdict of guilty of sexual assault was not a "conviction" under Colorado law. Defendant therefore pleaded with personal certainty that the Michigan trial court would enhance his sentence as a habitual offender, third offense. Defendant expressly, clearly, and repeatedly stated at the plea hearing that he would not plead guilty as a fourth habitual offender, and only pleaded guilty because he was absolutely certain that he was a third habitual offender. While the trial court advised that the controversy of defendant's habitual offender status would

be resolved at sentencing, it did not warn defendant that the status of the Colorado court's ruling would be judged by Michigan, rather than Colorado, law. Accordingly, defendant entered his nolo contendere plea misinformed by the trial court of the direct consequences of his plea.

The purpose of personal interrogation of the defendant by the court on the record is to facilitate judicial determination of a plea's voluntariness. *McCarthy*, 394 US at 467. Based on the court's inquiries, the court clearly understood defendant's intention to plead guilty only on the caveat that he was treated as a third habitual offender. The register of actions even reflects that on May 22, 2013, a member of the trial judge's staff entered "plea nolo contendere . . . plead guilty as charged providing it is hab 3 and not hab 4."[1] If the court forgot defendant's position in the 19-day furlough between the plea and sentencing hearing, defendant expressly reminded the court that he did not wish to proceed if his conviction was subject to enhancement as a fourth habitual offender.

Accordingly, we reverse the trial court's denial of defendant's motion to withdraw his nolo contendere plea. On remand, the trial court will actually be required to treat defendant as a habitual offender, third offense as a Colorado appellate court has since reversed his conviction. See *People of Colorado v Alger*, unpublished opinion of the Colorado Court of Appeals, issued March 10, 2016 (Docket No. 14CA1004). As such, defendant may wish to reenter a plea on the corrected information. Given our resolution of this issue, we need not consider defendant's contention that he was coerced into entering a plea to escape inhumane conditions at the Muskegon County Jail.

### III. SENTENCING

Whether defendant decides to proceed to trial or enter a new plea on remand, the trial court will be required to impose a new sentence enhanced for a third, rather than fourth, habitual offender.[2] The appellate concerns defendant raises in connection with his current sentences will bear relevance on resentencing. Defendant contends that the trial court violated his constitutional rights by scoring several offense variables based on judicially-found facts. Since defendant's sentencing, our Supreme Court has declared the mandatory legislative sentencing guidelines unconstitutional. *People v Lockridge*, 498 Mich 358, 379; 870 NW2d 502 (2015). Under the new regime, a court must still accurately score a defendant's offense and prior record variables and may rely on judicially-found facts in selecting a sentence. *Id.* at 392 n 28. However, the court must treat the resultant sentencing range as advisory. *Id.* at 391-392.

---

[1] Defendant's plea was not "conditional" in the sense recognized by the court rules. His plea was conditioned upon the trial court's ruling regarding his status; it did not preserve the right to appeal a specific ruling made below. See MCR 6.301(C); *People v Reid*, 420 Mich 326; 362 NW2d 655 (1984).

[2] If defendant has been convicted of additional felonies in the interim, the court may consider those as well, as long as the court adequately advises defendant before he enters a new plea, if he chooses that course.

If we were affirming defendant's plea-based convictions, we would remand for determination of whether resentencing were required. See *id.* at 395-396, quoting *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005). As we reverse, however, we need merely forewarn the trial court to conduct sentencing consistent with *Lockridge* on remand.

We vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher